Harold ADKINS on behalf of all other plaintiffs similarly situated, known or unknown, Plaintiff,

v.

MID–AMERICA GROWERS, INC., Defendant.

No. 88 C 980.

United States District Court, N.D. Illinois, E.D.

March 1, 1992.

Jonathan D. Moses, William J. Sneckenberg & Associates, Ltd., Chicago, Ill., Donald Ray Brewer, Donald R. Brewer, Chartered, Dundee, Ill., John William Billhorn,

John W. Billhorn, P.C., Chicago, Ill., for plaintiff.

Edward W. Bergmann, Camille Annette Olson, Anthony B. Byergo, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., Douglas Alan Gift, Herbolsheimer, Lannon, Henson, Duncan & Reagan, P.C., LaSalle, Ill., for defendant.

## ORDER

NORGLE, District Judge.

Before the court are Harold Adkins' ("Adkins") and Mid–America Growers, Incorporated's ("Mid–America") objections to Magistrate Judge Gottschall's January 24, 1992, Report and Recommendation ("Report"). The Report is modified as set forth below.

## FACTS

Adkins filed suit claiming Mid–America deprived him of overtime wages to which he was entitled under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* The case was eventually certified as a class action and Adkins was named class representative. The matter was assigned to the magistrate judge by this court.

Adkins represents a class of past and present hourly workers in a rural Mid–America greenhouse. Most class members are uneducated and many lack even the most basic literacy skills. For the most part, the class members change residences frequently and, as a result, are often difficult to locate. Because the claims are based on unpaid overtime wages, the amount sought per person is relatively low.

On January 7, 1991, Mid–America served Adkins' counsel with a request to produce seeking all documents in the class members' possession or control relating to the hours of work, job duties, work performed, and products handled by plaintiffs while employed by Mid–America since October, 1987. Adkins' attorneys called together a large portion of the known plaintiffs at a local restaurant on February 26, 1991. There Adkins' counsel stood on a table and shouted out the discovery request to the crowd. Anyone who had (or could obtain) any information requested was asked to identify themselves so that the documents could later be collected. No one replied. Adkins' counsel responded to the January 7 request by writing "None. Investigation continues."

Mid–America then proceeded to depose each known individual plaintiff. After eighty-one depositions, it was discovered that at least twenty-two plaintiffs had documents covered by the January 7 request. Mid–America moved for sanctions.

On January 24, 1992, the magistrate judge issued her Report (attached as Exhibit A). In it, she concluded that Adkins' counsels' response to the January 7 request did not comply with Federal Rule of Civil Procedure 26(g). Report, at 471. However, the magistrate judge determined that the evidence not produced was not critical. *Id.* at 473. She also decided, over counsel's objections, that Adkins' attorneys had an affirmative obligation to transmit the request to produce to each individual plaintiff and, therefore, effectively allowed discovery to proceed on an individual plaintiff level. *Id.* at 474. After ruling that sanctions against the clients for the admittedly incomplete response was not appropriate, she concluded that Adkins' attorneys' conduct was sanctionable, citing Federal Rules of Civil Procedure 37(b), 26(g), and 11. *Id.* She finally determined that neither Betty Cherry nor Charlotte Luscher should be admitted into the current class of plaintiffs. *Id.* at 476.

Both sides filed objections to the report. Adkins objected to the magistrate judge's allowing discovery to be propounded on individual class plaintiffs and the award of sanctions against his attorneys. Mid–America objected contending the magistrate judge was correct in sanctioning Adkins' attorneys for a discovery abuse and sought a limitation of the magistrate judge's determination of the law of the case. Given this court's modification of the Report, the court need not reach Mid–America's objections.

## DISCUSSION

■ Upon the submission of a report and recommendation, the district judge shall

make a *de novo* determination upon the record and may accept, reject, or modify the recommended decision. Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1)(C); *United States v. Rodriguez*, 888 F.2d 519, 521 (7th Cir.1989). In making this determination, the judge must look at all the evidence contained in the record and retains final authority over determination of the dispositive motion. *Delgado v. Bowen*, 782 F.2d 79 (7th Cir.1986).

■ In the Report, the magistrate judge concluded that discovery on an individual basis was proper in this case. Whether prior to class certification or after, discovery, except in the rarest of cases, should be conducted on a class wide level. Professor Newberg warns, "[t]he use of extensive and complicated interrogatories and depositions by the party opposing the class may debilitate the putative class in such a way as to preclude certification by dissuading class members from continuing to assert their claims." Herbert B. Newberg, *Newberg on Class Actions* § 16.05 (Supp.1989).

This case exemplifies the hazards of individual class plaintiff discovery. After receiving the go ahead from the magistrate judge, Mid–America served discovery on each plaintiff (through Adkins' counsel) and deposed more than eighty class members. This was a tremendous burden on Adkins' counsel. *See generally, id.* at §§ 7.08, 9.43. *See also* Fed.R.Civ.P. 26(g)(3) (stating that overly oppressive conduct is sanctionable).

Moreover, the ideas of a class action and individualized discovery do not fit together well. Federal Rule of Civil Procedure 23 states "[o]ne or more members of a class may sue ... as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable...." Fed.R.Civ.P. 23(a). If joinder of all parties is impracticable, propounding discovery like interrogatories, depositions, and requests to produce on an individual basis is even more impracticable. Indeed, many class actions have hundreds of thousands of members. *See, e.g., In re "Agent Orange" Product Liability Litiga-*

*tion*, 821 F.2d 139 (2d Cir.), *cert. denied*, 484 U.S. 953, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987); *In re A.H. Robins Co.*, 880 F.2d 769 (4th Cir.1989) (Dalkon Shield litigation). Taken to its logical limits, individualized discovery would prevent such actions from being litigated.

Adkins' counsel suggested class-wide discovery on these issues but that request was denied. In a class action such as this, class-wide discovery was more appropriate. The documentation relating to Mid–America's liability could be conducted on a generalized class-wide basis to give Mid–America an idea of the amount of liability it might be facing. Even a sample of certain representative plaintiffs might be drawn to assess the situation more accurately. *See Long v. Trans World Airlines, Inc.*, 761 F.Supp. 1320 (N.D.Ill.1991) (use of sampling method to determine amount of liability). However, once the class becomes well-defined, and the court deems it appropriate to proceed on an individual basis, the class may be decertified and allowed to proceed. Fed.R.Civ.P. 23(e). But that need not ever happen as numerous class actions go to trial.

■ Even if discovery on an individual basis was proper, sanctions were not appropriate here for several reasons. First, this type of "abuse" was not sanctionable given the specific facts of this case. " 'Despite the increased license to impose sanctions, *judges should always reflect seriously upon the nuances of a particular case, and the implications the case has on the nature of the legal representation*, before imposing sanctions.' " *Thompson v. Duke*, 940 F.2d 192, 195 (7th Cir.1991) (emphasis added) (quoting *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 936 (7th Cir.1989) (quoting *In re Ronco, Inc.*, 838 F.2d 212, 217–18 (7th Cir.1988) (quoting *Brown v. National Bd. of Medical Examiners*, 800 F.2d 168, 173 (7th Cir.1986)))). Indeed, the power to impose sanctions should "be exercised with great caution." *Chambers v. NASCO, Inc.*, —— U.S. ——, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991). Adkins' counsel represents a large group of people who are often very difficult to

locate. It is even more difficult to communicate with these people and convey what is requested by Mid–America, that person's former employer. Despite these difficulties, counsel did directly or indirectly ask each known individual plaintiff at a group meeting if they had any documents that conformed with the request which he read aloud. No one responded that they had any of the documents requested and counsel asked those present to tell others of the request and to call if those persons had anything in response. Given the circumstances, this was appropriate and sanctions were not warranted.

■ Second, counsel left open the possibility of supplementing the response should counsel ever discover any documentation covered by the request. Production at the deposition of a class member, if counsel was not told by the class member of the document's existence prior to that moment, would be appropriate. *See* Fed.R.Civ.P. 26(e)(2)(B) (imposing duty to supplement in certain cases).

■ Third, the magistrate judge found no harm as a result of the deficient response. Report, at 473. Although harm is not required before the court may impose sanctions (*see* Fed.R.Civ.P. 11, 26(g) (both allowing imposition of sanctions for filing non-compliant pleading without proof of any harm resulting from the filing)), the lack of harm indicates that Adkins' counsels' error was slight. Slight error should not serve as the basis for large attorney liability particularly when, in hindsight, the entire procedure was erroneously allowed. *Sheets v. Yamaha Motors Corp.*, 891 F.2d 533, 539 (5th Cir.) (lack of harm prevented sanctions), *reh'g denied*, 897 F.2d 528 (5th Cir.1990). Therefore, no sanction was appropriate.

■ Now turning to the remainder of the Report, the court finds it to be thorough and accurate. Specifically, the magistrate judge properly concluded that neither Betty Cherry nor Charlotte Luscher should be allowed into the class because of lack of submission of proper affidavits. What separates affidavits from simple statements is the certification. The re-

quirement is not a trivial one for it subjects the affiant to perjury penalties if falsely made. *DeBruyne v. Equitable Life Assur. Soc.*, 920 F.2d 457 (7th Cir.1990) (refusing to rely on unsworn statement). The magistrate judge was correct in not relying on these deficient documents and thus denying admittance to the class.

## CONCLUSION

After a *de novo* review, the court modifies the Report. The court finds that the magistrate judge erroneously held that discovery in this class action should be conducted on an individual basis. Therefore, the award of sanctions as a result of Adkins' attorneys' answer to discovery requests was not proper. However, the magistrate judge properly concluded that Betty Cherry and Charlotte Luscher should not be added as class plaintiffs.

IT IS SO ORDERED.

## EXHIBIT A

### REPORT AND RECOMMENDATION

JOAN B. GOTTSCHALL, United States Magistrate Judge.

TO THE HONORABLE CHARLES R. NORGLE, SR., one of the Judges of the United States District Court for the Northern District of Illinois.

A number of matters are pending before this court in this lawsuit under the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 201 *et seq.* This report addresses each matter in turn.

### DEFENDANT'S MOTION FOR DISCOVERY SANCTIONS

Defendant has moved for discovery sanctions based on plaintiffs' allegedly insufficient response to defendant's request for any and all documents reflecting work performed and products handled by the more than 100 individual plaintiffs in this case. These documents are allegedly essential to defendant's affirmative defense under the FLSA. In order to put the parties' arguments in perspective, this report com-

mences with a review of applicable principles under the FLSA.

In an action under the FLSA, a plaintiff makes a prima facie showing of entitlement to overtime pay by showing that he or she worked in excess of 40 hours in a workweek. *See* 29 U.S.C. § 207. An employer may, however, avoid liability by proving that the employee was employed in "agriculture" within the meaning of the FLSA. 29 U.S.C. § 213(b)(12).

"The FLSA broadly defines agriculture as including 'farming in all its branches,' which in turn includes the 'cultivation and tillage of the soil, dairying, the production, cultivation, growing and harvesting of any agricultural or horticultural commodities ... and any practice performed by a farmer or on a farm as an incident to or in conjunction with such farming operations...." *Donovan v. Frezzo Bros., Inc.,* 678 F.2d 1166, 1168–1169 (3d Cir.1982) (quoting 29 U.S.C. § 203(f)). The statute embraces both a primary and secondary concept of agriculture. *Brennan v. Sugar Cane Growers Coop. of Florida,* 486 F.2d 1006, 1009 (5th Cir.1973). The primary meaning includes the elemental farming activities enumerated in the statute, such as cultivation, growing and harvesting. *Mitchell v. Huntsville Wholesale Nurseries, Inc.,* 267 F.2d 286, 290 (5th Cir.1959). *See also* 29 C.F.R. §§ 780.105 and 780.205. The concept of secondary agriculture is broader, encompassing the preparation of products for shipment, maintenance work, and clerical activities. *See Hodgson v. Ewing,* 451 F.2d 526, 529 (5th Cir.1971); 29 C.F.R. §§ 780.128 and 780.158. Thus, an employee's work on a farm may still be exempt even though his or her job includes tasks in addition to the actual growing of plants.

One of the critical issues in this lawsuit concerns the requirement that exempt agricultural activities be performed in connection with a farmer's own farming. Where a farmer processes commodities that are the products of his or her own farm, his or her employees will generally be considered engaged in agriculture. *E.g.,* 29 C.F.R. §§ 780.137 and 780.141. However, the processing by that farmer of commodities produced by other farmers will not be considered agriculture. *Id.* Thus, where employees work in a facility that processes the products of their own employers, as well as other farmers, they are not engaged in work covered by the exemption for secondary agriculture. *E.g., Marshall v. Gulf & Western Industries, Inc.,* 552 F.2d 124, 126 (5th Cir.1977); *Mitchell v. Huntsville Wholesale Nursery, Inc.,* 267 F.2d 286 (5th Cir.1959); *Bowie v. Gonzalez,* 117 F.2d 11, 18 (1st Cir.1941). A common result is that some of a grower's employees, particularly those working in fields, may be found to be exempt, while others are not. *E.g., Brennan,* 486 F.2d at 1013.

If employees are engaged in both exempt and non-exempt work, the FLSA applies to all work performed. *Marshall,* 552 F.2d at 126. Thus, where an employee performs work which is exempt and work which is non-exempt within a given workweek, wages paid the employer are subject to the FLSA's wage and hour requirements. 29 C.F.R. § 780.11. The determination is made on a weekly basis, with the employer having the burden of establishing that wages for any given week are exempt. *See* 29 C.F.R. §§ 780.2 and 780.10.

Here it is undisputed that defendant sells "hard goods," such as ceramic and clay pots purchased from outside sources. Also, defendant purchases and resells certain plants. To the extent defendant's employees are engaged in the sale of plants purchased from others, and have little to do with the production and cultivation of defendant's products, the employees are arguably non-exempt. *See Brewer v. Central Greenhouse Corp.,* 163 Tex. 99, 352 S.W.2d 101 (1962). On the other hand, if defendant merely purchases seedlings, that fact should not in itself preclude use of the exemption. *See id.* 352 S.W.2d at 103; *Damutz v. William Pinchbeck,* 158 F.2d 882, 883 (2d Cir.1946). An important factual question in this case should therefore be the amount of time that elapses between purchase and resale of plants purchased from outside sources.

In resisting the discovery sought here, plaintiffs rely on the statement in several cases that the doctrine of *de minimis* has no viable place in the interpretation of the FLSA. *Dole v. West Extension Irrigation Dist.*, 909 F.2d 349, 351 (9th Cir.1990); *Brennan v. Sugar Cane Growers Coop. of Florida*, 486 F.2d 1006, 1013 (5th Cir.1974). Plaintiffs reason that because of its outside purchases of plants and other goods, defendant will be unable to prove that all its workers were exempt. Hence, defendant will presumably be relegated to proving the nature of individual employees' work activities. In summoning this type of proof, plaintiffs again predict failure, since defendant has admitted that in many cases it does not have knowledge concerning the tasks performed by a worker. Defendant responds that its supervisors can provide information concerning the horticultural activities performed by workers.

Obviously, a critical legal issue in this case is whether *de minimis* non-exempt work precludes application of the FLSA's agricultural exemption. Resolution of that question in plaintiffs' favor could indeed dispense with much of the need for individualized proof in this case. On the other hand, at least one case has spoken of the *de minimis* doctrine in an FLSA case. *Damutz v. William Pinchbeck*, 158 F.2d 882, 883 (2d Cir.1946). At least one other case has also found the exemption applicable even though a fairly large amount of outside growers' products were processed by a farmer. *Wirtz v. Tyson's Poultry, Inc.*, 355 F.2d 255 (8th Cir.1966). Notably, *Wirtz* reached its conclusion only after analyzing the employer's organizational structure and contractual relationships with outside growers. In contrast, the record before this court contains only broad statements concerning defendant's purchases from outside sources. Given this lack of factual background, it would be premature to address this important legal question.

In the interim, defendant is entitled to discovery of all relevant materials bearing on the question of whether specific workers were exempt. Employee notes of their activities are highly relevant to this inquiry.[1] Thus, in considering this motion for sanctions, this court first concludes that in failing to produce individual workers' notes, plaintiffs did not comply with Rule 26(b).[2] The inquiry does not end here, however, because Rule 26(g) requires verification that, "to the best of the signer's knowledge, information, and belief formed after a reasonable inquiry," the response is consistent with the federal rules. The discussion accordingly turns to the evidence concerning the factual basis for plaintiffs' responses to defendant's requests for production.

In their requests for production, defendant requested all documents concerning plaintiffs' hours of work, duties and work performed, as well as documents relating to products produced or handled. Another request called for "all notebooks, logs, calendars, diaries, writings of any kind or description ... which contain notations, information, evidence or references regarding or relating in any manner whatsoever to the Plaintiffs' claims in this case under the [FLSA] against Defendant." Defendant's Motion for Discovery Sanctions, Ex. A.[3] The parties agreed that individualized responses would be provided for any plaintiff possessing responsive documents. A collective response signed by the class representative and class counsel would be provided for those class plaintiffs possessing none of the documents covered by defendant's requests. Ex. B. Interestingly, insofar as it may shed light on what happened later, the parties initially disagreed about each individual plaintiff's obligation to provide discovery. The following state-

---

1. Although plaintiffs argue that the notes have a limited evidentiary value, that consideration goes to the weight to be given the statements in the notes, instead of the question of relevancy.

2. Plaintiffs have since tendered the notes of at least one plaintiff. That set of notes is admittedly incomplete.

3. Unless otherwise noted, all references to exhibits are to the exhibits to Defendant's Motion for Discovery Sanctions.

ment in a letter from plaintiffs' attorney expresses his initial attitude concerning discovery from individual plaintiffs:

> Because the 138 individual sets of both discovery items are identical, as well as the nature of inquiries made, after review it is obvious to us that the response of each class member will be identical. Thus, we propose that one, concise answers [sic] be provided to both the Interrogatories and the Request for Production. That answer will be on behalf of the entire Plaintiff Class....

Ex. M. Pointing to this statement, defendant speculates that plaintiffs' counsel presumed responsive documents did not exist and, therefore, did not ask plaintiffs whether they had such documents.

During the course of discovery, plaintiffs' attorney apparently met with class members on at least one occasion. One purpose of the meeting was to gather the information requested by defendant. While one class member recalls that counsel asked them if they had documents such as paycheck stubs evidencing hours worked, Ex. E at 14, 155,[4] the group generally does not recall being asked for documents relating to their job duties or the nature of the work performed by them.[5] Ex. D at 149–151, Ex. E at 13, 15, 155–156, Ex. F at 51. Several apparently recall seeing a document similar to defendant's requests for production, Ex. F at 50, Ex. G at 130, while others do not. Ex. D at 150, Ex. H at 41. Upon counsel's instruction, three plaintiffs invoked the attorney-client privilege when asked if they were ever instructed to search for documents concerning their work duties and products on which work was performed. Ex. H at 25; Ex. I at 39, 41; Reply, Ex. 1 at 56–59. One plaintiff testified that she understood that the agricultural exemption under the FLSA was one of the major issues in this lawsuit, Ex. G at 134. Nonetheless, she felt that

her daily notes were not the type of comments requested. Ex. G at 124–133, 136.

Altogether six plaintiffs have testified that they either kept some form of notes of tasks performed during their day's work or that, from time to time, they were given lists of chores to be performed. While one plaintiff kept spiral notebooks in which she recorded plants attended to, others typically discarded written notes and lists soon after the work was done. Ex. G at 124–127, Ex. I at 40; Reply, Ex. 1 at 66–68. The plaintiff maintaining the spiral notebooks also discarded some of them. Destruction of some documents has taken place after service of defendant's requests for discovery.

In a collective response, plaintiffs ultimately responded to all but one of defendant's requests for production by stating that no responsive documents existed. In response to the seventh request for notebooks, logs and the like, plaintiffs answered, "None. Investigation continues." Ex. C. If counsel at that time knew some of plaintiffs still had paycheck stubs, the answer would be untrue. That evidence goes to hours worked, however. Defendant's concern on this motion is with the documentation concerning job duties and work performed.

In defendant's view, plaintiffs' attorneys failed to fulfill their obligation under Fed. R.Civ.P. ("Rule") 26(g) to make a reasonable inquiry into underlying facts. Because evidence that defendant considers essential to its defense has also been destroyed, defendant also seeks several sanctions under Rule 37(b). In particular, defendant seeks the dismissal of certain plaintiffs' claims and the preclusion of evidence relating to several claims. These discovery sanctions under Rule 37 necessarily impact on the class members, and the court addresses them first.

---

4. According to that testimony, some plaintiffs informed counsel they might have paycheck stubs. Ex. E at 155–156.

5. There is one affidavit stating that counsel requested the information concerning job duties and work performed, Morris Aff., ¶ 2, but the affidavit is not notarized and may not have been signed by the affiant. The affidavit testimony is also inconsistent with the affiant's deposition testimony that she did not recall counsel having requested the documents listed in defendant's request for production. Ex. D at 149–151.

Unexcused violations of discovery requests justify harsh sanctions up to and including dismissal with prejudice. *Diehl v. H.J. Heinz Co.*, 901 F.2d 73, 75 (7th Cir.1990). "Dismissal is appropriate when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing." *Powers v. Chicago Transit Authority*, 890 F.2d 1355, 1362 (7th Cir.1989). Where the court finds the necessary willfulness, the sanction of dismissal may be imposed even if the attorney's clients were not responsible for the conduct leading to sanctions. *Roland v. Salem Contract Carriers, Inc.*, 811 F.2d 1175, 1180 (7th Cir.1987). *See also Metropolitan Life Ins. Co. v. Estate of Cammon*, 929 F.2d 1220, 1224 (7th Cir. 1991) (consequence of attorney's actions fall at client's doorstep rather than adversary's). In that scenario, a client may have legal recourse against its attorneys. *Roland*, 811 F.2d at 1180. On the other hand, the Seventh Circuit has in a number of cases expressed reluctance to affirm a dismissal where there is no sign of client neglect or awareness of its attorney's neglect. *See Anderson v. United Parcel Service*, 915 F.2d 313, 315 (7th Cir.1990). Thus, where an attorney's clients had not engaged in contumacious conduct and counsel was responsible for handling the progress of the case, an order of dismissal was reversed. *Beeson v. Smith*, 893 F.2d 930 (7th Cir.1990).

The rationale for precluding evidence as a sanction is that a party failing to provide discovery should not profit from its own failure. *General Atomic Co. v. Exxon Nuclear Co., Inc.*, 90 F.R.D. 290, 308 (S.D.Cal. 1981). Thus, parties failing to comply with discovery requests may be estopped from supporting or opposing designated claims or defenses. *Id.* In cases where evidence has been intentionally destroyed, it may be presumed that the materials were relevant. *See Synanon Church v. United States*, 820 F.2d 421, 428 (D.C.Cir.1987); *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557 (N.D.Cal.1987). Depending on the probative value of the destroyed documents, dismissal may even be

in order. *See, Synanon*, 820 F.2d at 427–428.

In choosing the appropriate sanction under Rule 37(b), the court should evaluate the nature of the prejudice to the discovering party and the degree of fault of the non-producing party. *General Atomic*, 90 F.R.D. at 307. Applying that principle here, defendant has not established that the degree of prejudice from non-production is great. The testimony of the six plaintiffs who made notes of their work indicates that these notes were generally for the purposes of remembering plants fed or watered. Since there is no evidence that these plaintiffs recorded all tasks performed in a day (above and beyond the watering and feeding) or that recordkeeping was systematic, the notes alone would not establish exclusive work on agricultural tasks. The loss of this evidence concerning tasks performed is not irreparable, since plaintiffs are available to testify concerning their job duties. Also, adverse inferences can be taken from the absence of these documents if, in the context of the evidence at trial, it appears that their absence is seriously prejudicial. Overall, the evidence does not appear to be critical.

Nor have defendants convincingly established fault on the part of the individual class members. While one of these plaintiffs testified to awareness of the issues in this lawsuit, she expressed her belief that the daily notes were not the kind of materials requested. Although that plaintiff's testimony suggests that she had reason to believe that her notes were responsive documents, it is something of a stretch to conclude that she and the other five plaintiffs destroyed the documents in question with a view to defeating defendants' affirmative defense. The plaintiffs in this case are generally uneducated people who cannot be expected to evaluate discovery requests without guidance. This court accordingly concludes that sanctions of dismissal or evidence preclusion are not appropriate here.

Nonetheless, steps should have been taken to avoid the discovery problem here. The unresolved factual question is whether

plaintiffs' attorney deliberately or negligently failed to properly instruct plaintiffs concerning their obligation to produce. The omission would be deliberate if counsel knew of the notes and negligent if counsel merely assumed that plaintiffs possessed no documents describing their work duties. While plaintiffs' attorney has invoked a dubious claim of privilege in connection with questions concerning the instructions given to class members, this court believes the question of sanctions can be resolved without further development of the record.

Under Rule 26(g), an attorney's signature on responses to discovery "constitutes a certification that the signer has read the request, response or objection, and that to the best of the signer's knowledge, information and belief formed after a reasonable inquiry it is (1) consistent with these rules and warranted by existing law ... [and] (2) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation...." Fed.R.Civ.P. 26(g). The rule "allows district courts to impose sanctions for discovery requests, responses and objections that fail to meet criteria similar to those for other pleadings laid out in Rule 11." *Insurance Benefit Administrators, Inc. v. Martin*, 871 F.2d 1354, 1360 (7th Cir.1989).

Under Rule 11, a court employs an objectively reasonable standard in assessing whether an attorney's conduct violates the Rule. *Thompson v. Duke*, 940 F.2d 192, 195 (7th Cir.1991). Where, as here, the sufficiency of a pre-filing investigation is questioned, factors bearing on the question are:

> [W]hether the signer of the documents had sufficient time for investigation; the extent to which the attorney had to rely on his or her client for the factual foundation underlying the pleading, motion, or other paper; whether the case was accepted from another attorney; the complexity of the facts and the attorney's ability to do a sufficient pre-filing investigation; and whether discovery would have been beneficial to the development of the underlying facts.

*Beverly Gravel, Inc. v. DiDomenico*, 908 F.2d 223, 225 (7th Cir.1990) (quoting *Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 752 (7th Cir.1988)). The ultimate determination as to reasonableness depends on the circumstances of each case. *Id.*

In this case, plaintiffs' attorneys are well aware that defendants' affirmative defense will very probably require individualized proof concerning each plaintiffs' job duties. Also, they are aware that their clients lack the type of training that would enable them to understand the scope and ramifications of formal discovery requests. While counsel reviewed some or all of those discovery requests at a meeting of the class, the evidence here shows that the substance and import of the requests were not adequately conveyed to plaintiffs. Concededly, the evidence of record does not permit a determination as to whether plaintiffs were instructed at the mass meeting to produce documents bearing on defendant's affirmative defense. Indeed, where information is conveyed such as a meeting, there is always the danger that not all attendees will remember the same information. Nonetheless, the readiness with which individual plaintiffs responded at deposition to questions concerning their notes suggests that counsel could have learned of their existence had he adequately interviewed his clients at the outset of this litigation.

In a multi-plaintiff case such as this, the court believes that an attorney has an affirmative obligation to transmit discovery requests to all members of the plaintiff class. Were such an obligation not enforced, this court believes that insufficient discovery responses by class plaintiffs could never be the subject of sanctions. There being no evidence that counsel took steps to ascertain that all defendant's requests for production were communicated to plaintiffs, the collective responses to defendant's requests for production were not based on an adequate pre-filing investigation. This court accordingly recommends that sanctions be assessed against the attorney who signed plaintiffs' response to the requests for production.

Deterrence is the primary goal of sanctions. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990). Generally, the appropriate sanction should be the least severe sanction adequate to achieve that purpose. *E.g., White v. General Motors Corp., Inc.*, 908 F.2d 675, 685 (10th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991); *Brown v. Federation of State Medical Boards of the United States*, 830 F.2d 1429, 1437 (7th Cir.1987). In this court's view, the deterrent function can be accomplished in this case by ordering plaintiffs' attorney to pay the expenses incurred by defendant in bringing this motion for sanctions. Defendants also request that present counsel be disqualified, but this court does not recommend it. Defendant has advanced no authority discussing disqualification as a sanction in circumstances such as these and the conduct complained of here has not been shown to be so egregious as to warrant such a harsh sanction. Also, because this court has declined to sanction plaintiffs, no conflict of interest has arisen between them and their attorneys.

### Motion of Betty Cherry for Retroactive Induction Into the Plaintiff Class

On December 12, 1990, this court set a February 17, 1991, cutoff date for the filing of consents to join in this action. After the cutoff, on March 29, 1991, two additional claimants were granted leave to join the class. Six months later, one of defendants' former employees, Betty Cherry ("Cherry"), moved on September 27, 1991 for retroactive induction into the class. Alleging that she would have joined this suit in November 1990 had she known she had a claim to overtime wages, Cherry asks to intervene.

The factual support for Cherry's application is not convincing. Cherry was employed by defendant from August 6, 1986 to June 28, 1991. She concededly was aware that fellow employees received notices of this lawsuit in November 1990. Nonetheless, according to her unsigned and unsworn statement, notice of the lawsuit did not appear in her mailbox until July 10, 1991. Unfortunately, there is no apparent means of verifying delay in delivery, as relevant information on the envelope transmitting the notice is largely illegible.

Under Rule 24, an application for intervention must be timely. *Ragsdale v. Turnock*, 941 F.2d 501, 504 (7th Cir.1991), *cert. denied* —— U.S. ——, 112 S.Ct. 879, 116 L.Ed.2d 784 (1991). "As soon as a prospective intervenor knows or has reason to know that his interests might be adversely affected by the outcome of the litigation he must move promptly to intervene." *United States v. City of Chicago*, 870 F.2d 1256, 1263 (7th Cir.1989). In determining timeliness, four factors should be considered:

> (1) the length of time the intervenor knew or should have known of his or her interest in [the] case, (2) the prejudice to the original party caused by the delay, (3) the resulting prejudice to the intervenor if the motion is denied, and any unusual circumstances.

*Ragsdale*, 941 F.2d at 504 (quoting *South v. Rowe*, 759 F.2d 610, 612 (7th Cir.1985)).

Plaintiffs attempt to meet this test by alleging that Cherry's lack of training kept her from understanding her rights and by emphasizing the potential inefficiency that would ensue if Cherry had to file her own lawsuit asserting a right to overtime compensation under the FLSA. As set forth below, this discussion will not address those arguments or the balancing required under Rule 24.

Cherry's allegations of delay in receiving her mail are made in an unsigned and unsworn affidavit. This being so, this court gives no credence to the factual allegations contained within it.[6] Nor does the court accept as a substitute the allegations of plaintiffs' attorneys, despite the potential application of Rule 11 if those factual alle-

---

**6.** Defendant has made several other allegations which cast some doubt on the credibility of Cherry's allegations. First, defendant provided plaintiffs with Cherry's correct mailing address, rather than the address to which the notice was allegedly delivered. Also, notice of the pending lawsuit was posted at defendant's Granville, Illinois facility.

gations are unfounded. This is not the first time plaintiffs' attorney has submitted unsworn affidavits in support of important factual allegations. *See* note 5 *supra.* Counsel is hereby advised that "affidavits" lacking the necessary certification will not be accepted as proof of facts asserted in them. Counsel having failed to provide the necessary factual foundation for this request under Rule 24, it is recommended that Cherry's motion be denied.

### Motion of Charlotte Luscher for Reinstatement to Plaintiff Class

On May 30, 1991, this court directed the parties to submit a draft report and recommendation ("R & R") for the dismissal of 41 party plaintiffs who had failed to respond to defendant's requests for written discovery. The ensuing R & R provided those plaintiffs' claims would be dismissed unless the plaintiffs demonstrated good cause in a motion for reinstatement to be filed on or before July 25, 1991, "after which date their claims shall be dismissed with prejudice and permanently foreclosed."

Charlotte Luscher ("Luscher"), one of the plaintiffs whose claim was so dismissed alleges in an unsworn and unsigned statement that she was a full-time student at Western Illinois University ("WIU") and returned to her permanent residence sometime in May 1991. According to that statement, "[a]t no time during the school year at WIU did I receive any of the interrogatories or the notice sent to me by my attorneys informing me that my claim was or would be dismissed if I failed to respond to the interrogatories." She then goes to state that she received the interrogatories through the mail forwarded postal system on approximately July 31, 1991. According to Luscher, she promptly responded to the interrogatories.

In opposing reinstatement, defendant correctly observes that Luscher has focused on good cause for failing to move for reinstatement, even though the language of the R & R contemplates a showing of good cause for failing to respond to defendant's interrogatories in the first place.[7] Also, although not noted by defendant, there appear to be gaps in the factual allegations of Luscher's statement. For instance, Luscher does not explain her arrangement for the forwarding of mail while away at school. Some mail seems to be forwarded. As evidenced by her consent to join the class, she received notice of the action. Also, since Luscher may have visited her permanent residence during the school year, the question arises as to whether defendant's interrogatories were available to her there.

Despite these deficiencies in Luscher's presentation of her request, a more fundamental problem mandates resolution of this matter against her. Significantly, Luscher's affidavit is unsworn and unsigned. In accordance with this court's earlier decision that improperly supported affidavits not be accepted in this action, this court recommends that Luscher's motion be denied. Any subsequent attempt to reinstate would have to correct the deficiencies noted in this report.

### CONCLUSION

For the reasons set forth above, this court recommends that defendant's motion for sanctions be granted on the terms set forth herein. The court further recommends that Betty Cherry's motion for retroactive induction into the class be denied and that Charlotte Luscher's motion for reinstatement be denied.

Counsel are given ten days from the date hereof to file objections to this Report and Recommendation with the Honorable Charles R. Norgle, Sr. Failure to object constitutes waiver of the right to appeal.

---

7. Since Luscher's claim has been dismissed with prejudice, she should also have addressed the prerequisites for reopening a case dismissed for failure to prosecute.