**SYNANON CHURCH, Appellant,**

v.

**UNITED STATES of America.**

No. 84–5164.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 26, 1987.

Decided June 5, 1987.

Sherman L. Cohn, Washington, D.C., for appellant.

Gary Gray, Atty., Dept. of Justice, with whom Roger M. Olson, Atty. Gen., Michael L. Paup, Robert S. Pomerance, Attys., Dept. of Justice and Joseph E. diGenova, U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before RUTH BADER GINSBURG and WILLIAMS, Circuit Judges, and HAROLD H. GREENE,* District Judge.

Opinion for the Court filed by District Judge HAROLD H. GREENE.

HAROLD H. GREENE, District Judge:

This is an appeal from the dismissal by the District Court of an action brought by appellant Synanon Church, Inc., in which Synanon sought a declaratory judgment that it qualifies as a tax-exempt organization under section 501(c)(3)[1] of the Internal Revenue Code of 1954. 26 U.S.C. § 7428 (1982).[2] That dismissal was based upon a holding that Synanon had committed a fraud on the court, a holding which was based, *inter alia*, on the preclusive effect the court accorded to a finding by the Superior Court of the District of Columbia in a prior case that Synanon had willfully destroyed evidence. *See Synanon Foundation, Inc. v. Bernstein,* No. 7189–78 (D.C.Sup.Ct. October 12, 1983), *aff'd,* 503 A.2d 1254 (D.C.App.1986).[3] *Synanon Church v. United States,* 579 F.Supp. 967, 972–76 (D.D.C.1984). Synanon argues that the doctrine of issue preclusion[4] could not support the dismissal on the facts of this case.

I

Discussion of Synanon's challenge to the dismissal of its action must begin with a review of the Superior Court's decision in *Bernstein.* That case involved a claim by Synanon that the owner of an apartment building located in the District of Columbia breached his contract with Synanon by refusing to sell the building to the organization. The owner defended on the basis that the property in question was zoned for use exclusively by non-profit organizations and that, as he understood it, Synanon was not a non-profit corporation. While discovery was proceeding, the defendant moved to dismiss the action on account of an alleged fraud on the court. Specifically, it was asserted that certain officers of Synanon had destroyed relevant documents and

---

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a).

1. Section 501(c)(3) grants tax exemption to entities "organized and operated exclusively for religious, charitable scientific ... or educational purposes, ... no part of the net earnings of which inures to the benefit of any private shareholder or individual...."

2. Section 7428 of the Internal Revenue Code enables an organization to obtain a declaratory judgment concerning its initial or continuing classification under section 501(c)(3).

3. Alternatively, the District Court held that dismissal was justified under Rules 16(f) or 41(b), Fed.R.Civ.P., for failure of Synanon to comply with pretrial orders issued on August 17, 1983 and October 21, 1983. We do not find it necessary to address this question, as our holding on the issue preclusion doctrine disposes of this appeal.

4. The doctrine was traditionally known as collateral estoppel, but in recent years the phrase issue preclusion has gained greater currency. This is based on the proposition that, as Professor Allan Delker Vestal has suggested, the language of civil procedure would be clearer and more descriptive if the terms "issue preclusion" and "claim preclusion" replaced the traditional labels of collateral estoppel and res judicata. Levin & Leeson, *Issue Preclusion Against the United States Government,* 70 *Iowa L.Rev.* 113, 113 (1985) (citing Ginsburg, *The Work of Professor Allan Delker Vestal,* 70 *Iowa L.Rev.* 13, 16 (1984)). The *Restatement (Second) of Judgments* now uses these new terms. *Restatement (Second) of Judgments,* introduction at 1 (1982).

---

tapes, thereby precluding compliance with legitimate discovery requests. According to the defendant, the destroyed documents and tapes dealt, *inter alia*, with "violence, money, purchase of guns, legal terror tactics, Holy War, changing partners and love match." *Bernstein*, No. 1789–78, slip op. at 54a.

After an eleven-day evidentiary hearing, Judge Braman of the Superior Court granted the motion to dismiss, upon his conclusion that "the evidence clearly and convincingly establishes a willful, deliberate and purposeful scheme to destroy ... extensive amounts of evidence and discoverable materials which probably would have had a dispositive bearing upon Synanon's complaint, that is its non-profit status...." *Id.* at 63a.[5] Finding the destroyed documents and tapes to be relevant to the issues presented in the case, the court held that these documents bore on Synanon's status as a non-profit corporation inasmuch as they contained information regarding the advocacy of violence and the deflection by Synanon of corporate monies to private use.[6] *Id.* at 41a, 53a–54a, 59a.[7] The court also stated that the destroyed evidence would have been "the best evidence to show that Synanon did not qualify as a non-profit corporation," *id.* at 57a, and that the destruction was prejudicial to defendant. *Id.* at 60a.[8] Ultimately, the court found that the cover-up by Synanon of its scheme to destroy material documents and tapes, various disingenuous discovery responses, and false testimony given by Synanon's legal department to aid that cover up constituted a "gross fraud upon the Court." *Id.* at 61a–64a. Citing abuse of the discovery process and fraud on the court, Judge Braman dismissed the complaint. Synanon appealed.

While its appeal was pending before the District of Columbia Court of Appeals, Synanon filed the present action in the District Court under 26 U.S.C. § 7428 seeking a declaratory judgment that it qualifies as a tax-exempt "religious or charitable" organization.[9] The Internal Revenue Service maintained in defense that Synanon did not operate exclusively for tax-exempt purposes within the meaning of section 501(c)(3); that Synanon's corporate earnings inured to the benefit of private individuals; and that ranking Synanon officials routinely incited and perpetrated violent and illegal acts, in contravention of the principle set forth in *Bob Jones University*.

In response to discovery demands made by the government, Synanon failed to produce many of the requested documents, advising the court upon inquiry that it had never concealed from or misrepresented to the IRS any relevant documents or facts.[10] The government, which learned of Synanon's earlier project to destroy tapes and documents, moved that Synanon be required to account for the missing evidence or face dismissal of the complaint. On August 17, 1983, the court ordered Syna-

5. The court found that the scheme to destroy the documents and tapes was carried out under the direction of one Steve Simon, Director of Archives of Synanon, with the knowledge and cooperation of Synanon's legal department. *Bernstein*, No. 7189–78, slip op. at 62a–63a.

6. To support its theory of relevance, the Superior Court relied in part on the principle set forth in *Bob Jones University v. United States*, 461 U.S. 574, 591–92, 103 S.Ct. 2017, 2028–29, 76 L.Ed.2d 157 (1983), that the activities of an organization must be consistent with public policy to qualify it as a tax-exempt, non-profit organization.

7. The titles of some of the tapes destroyed reflect their relevance to the issue of whether Synanon qualifies as a tax-exempt organization: "Holy War: CED [Charles E. Dederich] Awaits the Sound of Cracking Bone"; "CED Intends to Destroy Attorney Morantz"; "Department of Health: Investigate Sex Lives/Break Knees"; "People Should Be Terrified of Synanon"; "CED: $30,0,000 Give-Away-Address"; "CED Wealth"; "CED, Marty: CED's Investments"; "Money Distribution"; "Buying Diamonds"; and "It's Better to be Rich." Supplemental Appendix at 11–18.

8. Supporting its finding of prejudice, the court relied upon the principle that "[w]here willful destruction of evidence occurs, the inference is that the destruction was of materials adverse to the party who brings about the destruction...." *Bernstein*, No. 7189–78, slip op. at 61a.

9. The IRS had revoked Synanon's tax-exempt status for the years 1977 and 1978.

10. Affidavit of Philip C. Bourdette, Joint Appendix at 126.

non to produce "[a] complete and detailed record and accounting of all tape recordings and related documents and records destroyed or altered by Synanon." Joint Appendix at 144. Synanon responded by stating that it had already produced all the responsive documents it had in its possession, and it explained that any other materials requested had been "consistently stolen, borrowed or recycled" through no fault of its own. *Id.* at 151.

The court found this response to be unsatisfactory, and at a hearing held on October 21, 1983, it directed Synanon's counsel to produce immediately any "information that was either secreted, hidden or otherwise treated in that manner," together with any "inventory or record" of materials already destroyed. Synanon's response again denied any knowledge of any items that were destroyed, and it complained that unethical acts by the government had frustrated its efforts to identify the documents.

Upon the government's motion, the District Court dismissed the complaint, holding that Synanon had committed a fraud on the court by, *inter alia,* willfully and systematically destroying and altering an extensive number of documents and tapes relevant to a determination of Synanon's tax-exempt status. *Synanon Church,* 579 F.Supp. at 972. It was the court's reasoning that the Superior Court's decision in *Bernstein* precluded Synanon from arguing that it had not willfully destroyed discoverable materials.

Two years later, the D.C. Court of Appeals affirmed the Superior Court's decision in *Bernstein.* After noting that Judge Braman's dismissal order was predicated both on abuse of the discovery process and on fraud on the court, the court stated that its affirmance rested only upon the theory of fraud on the court. The majority found "ample evidence in the record" to support the Superior Court's conclusion that the involvement of the Synanon executives and attorneys in the fraud, their subornation of perjury, and their own false statements to the court constituted a fraud on the court warranting dismissal of the complaint. *Synanon Foundation,* 503 A.2d at 1262.

According to the appellate court, the fraud perpetrated by the Synanon executives and attorneys involved the "sponsorship and supervision of a massive program to destroy damaging and incriminating information contained in the Synanon archives." *Id.* at 1262–64. The court also noted that Synanon's attorneys made false statements to the trial court regarding the availability of relevant evidence, indicating that the documents and tapes sought for discovery merely could not be found when, in fact, the attorneys had themselves been involved in the destruction of the very documents and tapes that had been requested.

The present appeal was filed after the D.C. Court of Appeals had issued its decision in *Synanon Foundation.* Synanon asserts here that since the D.C. Court of Appeals affirmed the Superior Court only on the basis of fraud on the court, the *Bernstein* trial court's finding of willful destruction of evidence carried no preclusive effect. Alternatively, Synanon contends that, even if issue preclusion is appropriate here, the Superior Court's finding of willful destruction cannot constitute a basis for dismissal by the District Court because of that court's failure to make certain findings. *See* Part IV, *infra.*

## II

The doctrine of issue preclusion holds that once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive against a party to the prior proceeding in a subsequent suit based on a different claim. *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649, n. 5, 58 L.Ed.2d 552 (1979); *Carr v. District of Columbia,* 646 F.2d 599, 602 (D.C.Cir.1980). On this basis, Judge Braman's decision in the Superior Court regarding Synanon's document destruction clearly would have carried preclusive effect in the District Court with respect to the destruction issue but for the D.C. Court of Appeals' decision. However, if a trial court decides a matter on alterna-

tive grounds, and an appellate court affirms on only one of these grounds, the preclusive effect is limited to the ground of affirmance. *United States v. $149,345*, 747 F.2d 1278, 1280–82 (9th Cir.1984); *United States Gypsum Co. v. Schiaro*, 668 F.2d 172, 184 (3d Cir.1981), *cert. denied*, 456 U.S. 961, 102 S.Ct. 2038, 72 L.Ed.2d 485 (1982); *Stebbins v. Keystone Insurance Co.*, 481 F.2d 501, 507 n. 13 (D.C.Cir.1973).

It is on this refinement of the preclusion doctrine that Synanon relies. Synanon contends that, since the D.C. Court of Appeals affirmed only on the basis of fraud on the court, and not on the basis of abuse of the discovery process, preclusive effect may not be accorded to the Superior Court's finding of willful destruction of evidence. It follows, so the argument goes, that the District Court's decision which gave preclusive effect to the Superior Court's willful destruction of evidence finding cannot be sustained.[11]

While we agree with Synanon that preclusive effect may not be accorded to the Superior Court's holding that there was an abuse of discovery process, we do not agree with the assumption implicit in Synanon's argument that the Superior Court's finding of willful destruction of evidence related only to the discovery abuse prong of that court's holding. We think it to be clear from the record that the Superior Court's conclusion with respect to the Synanon fraud on the court rested in substantial part upon the court's factual finding that Synanon had willfully destroyed evidence just as did its conclusion with respect to abuse of the discovery process.

According to the Superior Court, the fraud committed by the Synanon executives and attorneys involved the "sponsorship and supervision" of the scheme to destroy the documents and tapes sought and the misrepresentations made by Synanon attorneys to the Superior Court regarding the availability of the destroyed documents and tapes. Indeed, the holding of fraud on the court was necessarily predicated upon the court's finding that pertinent documents and tapes had been destroyed by Synanon: absent the destruction, the Synanon executives and lawyers who sponsored it would not have made, would not have had any reason to make, the misrepresentations regarding the destroyed documents which constituted the fraud on the court.

We think it is also clear that, whatever else it may have done, the D.C. Court of Appeals did not reject but sustained Judge Braman's finding that Synanon had been guilty of destroying evidence. Synanon relies to the contrary upon a separate statement by Judge Mack who was also the author of the principal D.C. Court of Appeals' Opinion. In that separate statement, Judge Mack indicated that she did not believe Synanon's nonprofit status or its violent activities to be relevant to the issues raised by "Synanon's relatively uncomplicated action for rescission" of the contract for the sale of real property, *Synanon Foundation*, 503 A.2d at 1266–67, especially since the Superior Court had no authority to revoke the organization's nonprofit status.

However, there is nothing in Judge Mack's separate statement that undermines in any way either the conclusion she reported for a unanimous court that Judge Braman had properly dismissed the action on the basis of the perpetration of a fraud on the court or the underlying findings regarding the destruction of documents. Although the separate statement mentions with disapproval Judge Braman's decision to grant the motion to dismiss based upon Synanon's destruction of evidence, *Synanon Foundation*, 503 A.2d at 1264, this was done strictly in the context of Judge Mack's discussion of the discovery abuse question. That disapproval did not, it could not, detract from Judge Mack's own numerous references to documents destruction in the majority opinion she also authored in which, as noted above, the D.C.

---

11. Synanon does not contend that the District Court erred in that regard, for that court's decision was issued before the D.C. Court of Appeals had narrowed Judge Braman's ruling. Rather, it is Synanon's position that the subsequent D.C. Court of Appeals opinion precludes any reliance on the Braman ruling.

Court of Appeals *upheld* Judge Braman with respect to his fraud-on-the-court ruling. That majority opinion of course represents the relevant holding for issue preclusion purposes.[12]

### III

Upon this state of the various proceedings, the answer to the question whether the Superior Court's finding of willful destruction of evidence may be accorded preclusive effect depends upon whether this Court will follow the so-called *Evergreens* rule, which limits preclusion to "ultimate facts," or the view set forth in the *Restatement (Second) of Judgments* § 27 comment j, which applies the rule of issue preclusion to any fact determination essential to the judgment.

■ The *Evergreens* rule, propounded by Judge Learned Hand in *The Evergreens v. Nunan,* 141 F.2d 927, 928 (2d Cir.1944), provides that no fact decided in the first litigation can conclusively establish anything for purposes of the second action except an ultimate fact. While this rule gained acceptance initially, it has more recently been subjected to frequent criticism. *Phillips v. United States,* 502 F.2d 227, 230 & n. 17 (4th Cir.1974), *vacated on other grounds,* 424 U.S. 961, 96 S.Ct. 1453, 47 L.Ed.2d 728, *cert. denied,* 429 U.S. 1024, 97 S.Ct. 644, 50 L.Ed.2d 626; *Overseas Motors, Inc. v. Import Motors, Ltd.,* 375 F.Supp. 499, 519, 523–24 (D.C.Mich.1974),

*aff'd,* 519 F.2d 119 (6th Cir.1975), *cert. denied,* 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 304.[13] That criticism, by both courts and commentators, is based primarily upon the difficulty in administering a distinction between ultimate and mediate facts, and the lack of correspondence of such a distinction to any intelligible reasons for limiting preclusion. *See* Heckman, *Collateral Estoppel as the Answer to Multiple Litigation Problems in Federal Tax Law: Another View of Sunnen and The Evergreens,* 19 *Case W.Res.* 230, 236–37, 248–50, 252–53 (1968); Polasky, *Collateral Estoppel—Effects of Prior Litigation,* 39 *Iowa L.Rev.* 217, 237 (1954).

That is so because even though a fact may be regarded in theory as less than an ultimate fact, the parties may have expended great effort in proving whether or not that fact existed, and the fact may even have been regarded by everyone involved in the litigation as the key issue in a dispute. In these circumstances, so the critics of *Evergreens* state, the rule is at odds with the purposes of the doctrine of issue preclusion: the conservation of judicial resources and the fostering of reliance on prior judicial action by minimizing the possibility of inconsistent decisions and by protecting a prevailing party from vexatious litigation. *See Montana,* 440 U.S. at 153–54, 99 S.Ct. at 973–74.

On this basis, many courts, including the Second Circuit itself,[14] have ignored the *Evergreens* rule,[15] and they have measured

---

**12.** Moreover, Judge Mack's separate statement itself presents no obstacle to reliance on the Superior Court's findings on the document destruction question, for that statement, as noted *supra,* was concerned with the relevance of Synanon's activities, including document destruction, to the real estate dispute, not with the issue whether such destruction had, in fact, taken place.

**13.** Although the Supreme Court in 1957 endorsed the *Evergreens* rule in *Yates v. United States,* 354 U.S. 298, 337–38, 77 S.Ct. 1064, 1086–87, 1 L.Ed.2d 1356 (1950), its refusal in that case to accord preclusive effect to prior findings was based upon the extreme remoteness of the evidentiary issues from the ultimate issues involved in the second case. Indeed, the Court had expressly reserved the possibility that exceptions may be made to the *Evergreens* rule. *Id.* We believe that, even if the *Evergreens* test,

properly adjusted for the *Yates* remoteness formula, were applied here, the District Court's grant of preclusive effect to the Superior Court's finding of willful destruction of evidence would probably have to be sustained, inasmuch as that finding was intimately connected with the latter court's holding of fraud on the court.

**14.** *Wickham Contracting Co. v. Board of Education of City of New York,* 715 F.2d 21, 25 (2d Cir.1983). *See generally United States v. Kramer,* 289 F.2d 909, 916–19 (2d Cir.1961) (suggesting that the *Evergreens* court did not intend to draw a rigid line and that that decision could be explained on the ground that different issues were involved in the two proceedings).

**15.** *Coward v. Colgate-Palmolive Co.,* 686 F.2d 1230, 1234–35 (7th Cir.1982), *cert. denied,* 460 U.S. 1070, 103 S.Ct. 1526, 75 L.Ed.2d 948 (1983);

the scope of preclusion, not by a distinction between ultimate and mediate facts, but rather by focusing more directly on the quality and extensiveness of litigation in the first action. For that reason too, the *Restatement (Second) of Judgments* § 27 comment j has rejected the distinction between ultimate and evidentiary facts, instead according preclusive effect to determinations that are essential or necessary to the judgment.

▪ This Court has several times indicated its preference for the "essential" or "necessary" standard of the Restatement, as distinguished from the "ultimate fact" standard of *Evergreens, American Employers Insurance Co. v. American Security Bank,* 747 F.2d 1493, 1498 (D.C.Cir.1984); *Otherson v. Department of Justice,* 711 F.2d 267, 273 (D.C.Cir.1983); *Association of Bituminous Contractors v. Andrus,* 581 F.2d 853, 860 (D.C.Cir.1978); *National Savings & Trust Co. v. Rosendorf,* 559 F.2d 837, 838–39 (D.C.Cir.1977); *Stebbins,* 481 F.2d at 506–07, and we now once again confirm that preference. Accordingly, we hold, following the Restatement, that preclusive effect may be accorded to a decision on an issue if that issue was "actually recognized by the parties as important and by the trier of fact as necessary to the first judgment." *Restatement (Second) of Judgments* § 27 comment j.

▪ Thus, the proper inquiry in this case is whether the Superior Court's finding of willful destruction of evidence was essential or necessary to its holding of fraud on the court. The answer to that inquiry must clearly be in the affirmative. The fraud Synanon committed on the Superior Court was the scheme instituted by its high officers and its legal department to cover up and conceal the destruction of discover-

able materials by giving false testimony in deposition and before the Superior Court. *Bernstein,* No. 7189–78, slip op. at 63a. As we explain in Part II, *supra,* if Synanon had not destroyed discoverable materials, there would have been nothing to cover up, there would have been no need or occasion to make misrepresentations to the court, and no fraud would have been committed on the court. In short, the determination that Synanon willfully destroyed evidence was necessary, even essential, to the holding of fraud on the court. Since the D.C. Court of Appeals affirmed that fraud holding,[16] the District Court could properly give preclusive effect to the Superior Court's finding that discoverable evidence had been willfully destroyed.

## IV

Synanon argues that, even if the Superior Court's finding could appropriately be given preclusive effect, it could not constitute a valid basis for a dismissal of the action by the District Court in the absence of specific findings by that court of relevance, lack of cumulativeness of the destroyed evidence, and prejudice to appellees. This argument, too, lacks merit, for several reasons.

First, contrary to Synanon's claim, the District Court did take account of the relevance of the destroyed materials to the central issue before it. Indeed, the court specifically stated that "the action must be dismissed due to plaintiff's willful, systematic, and extensive destruction and alteration of documents and tapes *relevant* to a determination of Synanon's tax-exempt status." *Synanon Church,* 579 F.Supp. at 972 (emphasis added).[17]

*Gibson v. Missouri Pac. R.R.,* 579 F.2d 890, 892 (5th Cir.1978), *cert. denied,* 440 U.S. 921 (1979); *Singer v. A. Hollander & Son,* 202 F.2d 55 (3d Cir.1953); *Reid v. United States,* 421 F.Supp. 1244 (E.D.Cal.1976); *International Rys of Central America v. United Brands Co.,* 405 F.Supp. 884 (D.C.N.Y.1975), *aff'd,* 532 F.2d 231 (2d Cir.), *cert. denied,* 429 U.S. 835, 97 S.Ct. 101, 50 L.Ed.2d 100 (1976).

16. Moreover, as discussed above, that court actually relied on proof of evidence destruction in reaching its conclusion in that regard.

17. The evidence may or may not have been relevant to the Superior Court lawsuit involving the sale of real estate; but there can be no serious contention that it would not have been relevant to an action for tax exemption. *See Bob Jones University,* 461 U.S. at 591–92, 103 S.Ct. at 2028–29.

 Second, a party which intentionally and willfully destroys discoverable materials is poorly situated to require the making of a specific finding that the destroyed evidence is not cumulative. *See Alexander v. National Farmers Organization,* 687 F.2d 1173, 1205 (8th Cir.1982), *cert. denied,* 461 U.S. 937, 103 S.Ct. 2108, 77 L.Ed.2d 313 (1983). The occurrence of a cover-up raises a presumption that disclosure of the materials would be damaging, *see Hammond Packing Co. v. Arkansas,* 212 U.S. 322, 350–51, 29 S.Ct. 370, 379–80, 53 L.Ed. 530 (1909), hence not merely cumulative. In any event, it is clear from the District Court's opinion that it found the destroyed evidence to be not merely cumulative, for it repeatedly emphasized the value of the destroyed evidence to the government's case. In fact, the court explicitly noted that Synanon "willfully destroyed the most probative evidence of its true claim to tax-exempt status." *Synanon Church,* 579 F.Supp. at 975.

Finally, the District Court made adequate findings of prejudice to the government by Synanon's destruction of evidence.[18] As stated above, the court found that the destroyed documents were the "most probative evidence" pertaining to Synanon's entitlement to tax-exempt status. Without the "most probative evidence" of Synanon's claim—presumably negative to that claim—the IRS was necessarily prejudiced in presenting its case.[19]

### V

We conclude that Synanon was bound in this litigation by the Superior Court's finding in *Bernstein* that the organization willfully destroyed evidence relevant to its entitlement to tax-exempt status. We also hold that the District Court made sufficient findings of relevance and lack of cumulativeness of the destroyed evidence and of prejudice to the government to permit the court to apply issue preclusion against Synanon. The District Court's dismissal on the basis of fraud on the court is therefore

*Affirmed.*

---

**18.** It is not at all clear that, on the facts of this case, the District Court was required to make such findings. Willful destruction of evidence by a party properly raises the inference that the materials destroyed were adverse to the party which brings about the destruction. *Washington Gas Light Co. v. Biancaniello,* 183 F.2d 982 (D.C.Cir.1950). To be sure, Synanon attempted to rebut this inference by arguing that the government had sufficient evidence, without the destroyed documents, to support its ruling revoking Synanon's tax-exempt status. This argu- ment dangerously resembles a concession by Synanon that the suit it brought in the District Court was devoid of merit.

**19.** Additionally, the District Court was entitled to rely on the Superior Court's explicit findings as to the identity of the destroyed documents, which served as the basis for the District Court's finding of prejudice to the defendant with respect to the issue of Synanon's tax-exempt status.