62 F.3d 424
 314 U.S.App.D.C. 101
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
James K. JEANBLANC, Appellant,
v.
The OLIVER CARR COMPANY, Appellee.
 No. 94-7118.
 United States Court of Appeals, District of Columbia Circuit.
 June 21, 1995.
Rehearing and Suggestion for Rehearing En Banc Denied Aug. 8, 1995.
 
 Before: WALD, SILBERMAN AND SENTELLE, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This appeal was considered on the record from the United States District Court for the District of Columbia, on the briefs filed by the parties, and on oral arguments presented May 12, 1995. The issues were accorded full consideration by the Court and occasion no need for a published opinion. See D.C. Cir. Rule 36(b). For the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED AND ADJUDGED that the judgment of the District Court be affirmed on all counts in accordance with the accompanying memorandum.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C. Cir. Rule 41.
 
 ATTACHMENT
 MEMORANDUM
 
 4
 Appellant James Jeanblanc appeals the entry of summary judgment against him in his action against Oliver Carr Co. ("Carr") in this action arising out of a real estate partnership as well as the dismissal of that part of his claim relating to his father's interest in the partnership as a sanction for destruction of documents. We have considered Jeanblanc's arguments in full, but address here only those arguments which we believe merit separate consideration. We affirm the judgment of the district court on all counts.
 
 I. BACKGROUND
 
 5
 Appellant James K. Jeanblanc and his father Lindsey Jeanblanc were limited partners in the Square 224 Partnership ("Square 224"), a limited partnership in which appellee Oliver Carr Company ("Carr") was the lone general partner. In 1979, the Jeanblancs each invested $125,000 in the partnership, which was formed to acquire and hold the property located in Square 224 of the District of Columbia, and then later contribute the property to a development venture which had yet to be formed. To compensate Carr Co. for its efforts in assembling the Development Property, the agreement provided Carr Co. with a credit to its "capital account in the development venture" (the "Carr Land Credit") equal to the difference between Carr's acquisition cost of the development property and $20/sq.ft. It also provided Carr a fee for the services it would perform for the development venture, stating that 80% of this fee could be reinvested as an additional contribution to Carr's capital account in the development venture (the "Carr Development Fee"). The agreement contemplated that such reinvestments would result in the "appropriate adjustment" of all partners' partnership interests.
 
 
 6
 Finally, the agreement provided that any partner receiving an offer to buy its interest must inform the other partners of the offer. The other partners would then have a right of first refusal, with Carr getting priority to purchase. Excepted from this provision were transfers to a subsidiary of a partner and transfers "without consideration."
 
 
 7
 At a May 1980 meeting of the partners, Oliver Carr described a transaction to develop the property being negotiated with the Equitable Life Assurance Society ("Equitable"), in which Equitable would purchase a 25% interest in the new Development Venture for $6 million and Square 224 would own the remaining 75% (in exchange for the property held by the partnership). The property would be developed in two phases. At the meeting, Carr distributed a detailed handout explaining the terms of the Equitable deal, stating that: (1) Carr would recognize its Land Credit and Development Fee in Square 224, rather than in the Development Venture; (2) the Carr Land Credit would be recognized before recognition of a "general land credit" to be credited to all partners; (3) a closed alley that bordered the development property ("the alley") was treated as part of the land acquired by Carr Co. for purposes of calculating the Carr Land Credit; and (4) no land acquisition costs would be recognized for the alley. The handout indicated that, as a result of Carr Co.'s recognition of the credits, the Jeanblancs' individual shares would decrease from 2.49% to 1.81%.
 
 
 8
 In December 1980, Jeanblanc, his father and the other limited partners gave Carr Co. written authority to form the Development Venture with Equitable on the terms discussed at the May meeting. In February 1981, the day after executing the agreement with Equitable, Carr Co. provided the limited partners with a letter and enclosure further detailing the Venture's terms. The letter confirmed the effects of the Carr Land Credit, the Carr Development Fee, and the General Land Credit.
 
 
 9
 In 1984, Phase Two of the Development Venture began with Equitable providing a second level of financing and the partnership contributing the Phase II lots to the venture. Carr informed Jeanblanc that a second portion of the Land Credit and Development Fee would be applied in Phase II, and Jeanblanc complained that he thought that the "percentage would be the same." Although no Phase II credits were taken until 1986, Carr told Jeanblanc in 1985 that his interest would be diminished by the Phase II credits. In February 1986, Carr mailed Jeanblanc a spreadsheet that illustrated that his interest would decrease from 1.58% to 1.405% as a result of recognition of the Carr Land Credit and Development Fee. Again, in November, 1987, Carr Co. provided Jeanblanc with an elaborate step-by-step breakdown of the calculations.
 
 
 10
 On January 29, 1990, Carr Co. informed the limited partners that LaSalle Advisors Limited ("LaSalle") had offered to purchase Equitable's 25% interest in the Development Venture, and the interests of any individual partners in Square 224. Both Jeanblancs informed Carr that they wished to cash out. Each received $1.11 million for the sale of their respective 1.405% interests.
 
 
 11
 On December 17, 1990, Jeanblanc brought suit in the Eastern District of Virginia on his own behalf and derivatively for the other limited partners. The court dismissed Jeanblanc's derivative claims and transferred the remaining counts to D.C. District Court. On January 28, 1991, Lindsey Jeanblanc assigned his claim against Carr to his son, James. Shortly thereafter, Lindsey Jeanblanc destroyed all of his documents pertaining to Square 224.
 
 
 12
 On February 5, 1991, Jeanblanc filed a three-count amended complaint against Carr in district court, alleging that Carr Co. breached the partnership agreement and its fiduciary duties. Jeanblanc contended that he should have had 2.4907% of Square 224 when his interest was sold in 1990. In Count One, he alleged that Carr Co. defrauded him (and his father) in at least four ways: (1) by recognizing the Land Credit and Development Fee in the partnership and not in the development venture; (2) by recognizing the Land Credit before recognizing the General Land Credit; (3) by including the alley as part of the development property; and (4) by recognizing zero acquisition costs associated with the alley. Jeanblanc prayed for damages and an accounting. Additionally, he challenged various assignments of interests from Carr Co. to Carr Co. employees. Counts Two repeated the allegations and charged that Carr Co. breached its fiduciary duties in failing to sell all of Jeanblanc's interest. Count Three charged that Carr Co. failed to account for and distribute all of the proceeds of the May 1990 sale.
 
 
 13
 On March 3, 1992, Carr moved to dismiss the entire case as a sanction for destruction of documents. The district court granted Carr's motion in part, finding that Lindsey Jeanblanc destroyed every document in his control pertaining to the transactions at a time when he knew that a lawsuit was pending. As a sanction, the court dismissed the portion of the case arising from Lindsey Jeanblanc's interest.
 
 
 14
 On September 14, 1992, the parties filed cross motions for summary judgment. The court partially granted Carr's motion and denied Jeanblanc's motion. Although it had previously held in response to a 12(b) motion that counts one and two were equitable in nature and thus subject to laches rather than the statute of limitations, the Court revisited the issue on summary judgment. It concluded that the "overwhelming evidence of Jeanblanc's knowledge and his failure to act promptly, persuades the court that justice would not be served by denial of the defendant's statute of limitations defense." Stating that "both the discovery of additional and substantial evidence and the prevention of manifest injustice require reexamination of the Court's earlier rulings," the court found that a three-year statute of limitations applied. The court thus held that counts one and two of the complaint were time-barred. Alternatively, the court held that the assignments to Carr Co. employees were not "personal assignments" barred by the agreement, but rather were assignments to joint ventures that were "subsidiaries" of Carr, and thus allowable.
 
 
 15
 After settlement of the remaining claim and subsequent entry of judgment, Jeanblanc appealed.
 
 II. ANALYSIS
 
 16
 I. Laches and the Statute of Limitations.
 
 
 17
 In its disposition of the case below, the district court held that Jeanblanc's claims were barred by the three-year statute of limitations applicable to contract actions in the District of Columbia. See D.C. Code Ann. Sec. 12-301(7) (1994). Appellant claims that the district court erroneously applied the three-year statute instead of a twelve-year statute of limitations accorded documents under seal. See id. Sec. 12-301(6). Relying upon the proposition that, under District of Columbia law, a party who signs an instrument to which another has affixed his seal is presumed to adopt the seal, see McNulty v. Medical Service of D.C., Inc., 176 A.2d 783, 784 (D.C. 1962), appellant contends that the twelve-year statute applies here because the partnership agreement governing Square 224 was signed under seal by all of the limited partners.
 
 
 18
 Assuming arguendo the correctness of appellant's proposition that the twelve-year statute of limitations applies, we nonetheless conclude that appellant's claim is barred under the doctrine of laches. Although appellant's claims may be within the twelve-year period authorized by statute, the statute of limitations provides only the "outside limit beyond which [the legislature] has determined claims are simply too stale to be litigated." Detweiler v. Pena, 38 F.3d 591, 595 (D.C. Cir. 1994) (quoting, with approval, Deering v. United States, 620 F.2d 242, 245 (Ct. Cl. 1980)). Even where the twelve-year statute mandated for documents under seal applies, a claim may be otherwise barred as untimely by the equitable doctrine of laches. See Amidon v. Amidon, 280 A.2d 82, 84 (D.C. 1971) (applying laches in case involving separation agreement where only seven of the twelve years allowed by statute had passed).
 
 
 19
 In order to apply laches to bar a claim as untimely, a defendant must show that the plaintiff has unreasonably delayed in asserting a claim and that there was "undue prejudice" to the defendant as a result of the delay. American Univ. Park Citizens Ass'n v. Burka, 400 A.2d 737, 740 (D.C. 1979).
 
 
 20
 We believe that Jeanblanc's delay until 1990 in filing suit was unreasonable and inexcusable. The record reflects that Carr provided sufficient information regarding the disputed transactions at a May 1980 meeting of the partners to put Jeanblanc on notice of all relevant facts. Again, after executing the agreement with Equitable Life Assurance Society, in February 1981, Carr provided detailed handouts indicating how Jeanblanc's shares would decrease in percentage terms. Additionally, Carr informed Jeanblanc of the challenged transfers to James Clark in 1982. Our review of the record reveals that appellants had sufficient information at that time to challenge Carr's calculation of ownership interests. Jeanblanc's rationale for not challenging these transactions earlier -- that appellees had misled them into believing that the transactions conformed to the partnership agreement -- is unavailing because Jeanblanc had a copy of that agreement to refute that claim. Thus, with respect to count one and the claim that Carr improperly transferred an interest to James Clark, we conclude that Jeanblanc's delay of nearly eight years in filing suit was unreasonable.
 
 
 21
 Next, we agree with Carr that Jeanblanc's delay in filing suit unduly prejudiced Carr. In the normal course of its business, Carr had destroyed certain business documents -- including invoices, bank statements, cancelled checks, etc. -- with which it could have been able to defend itself had the claim been brought in a timely manner. Among the inequities that the doctrine of laches protects against is the loss of pertinent evidence. See NAACP v. NAACP Legal Defense & Educ. Fund, Inc., 753 F.2d 131, 137 (D.C. Cir.), cert. denied, 472 U.S. 1021 (1985). Appellant claims that undue prejudice cannot arise from the destruction of one's own documents. Although we agree that under certain circumstances -- such as a potential defendant having knowledge of pending claims -- destruction of evidence will clearly not support a finding of prejudice, see EEOC v. Massey-Ferguson, Inc., 622 F.2d 271, 280 (7th Cir. 1980); Bernard v. Gulf Oil Co., 596 F.2d 1249, 1257 (5th Cir. 1979), we find that the circumstances here present a compelling case of undue prejudice. Appellee's destruction of documents was not willful; rather, the documents were destroyed in the ordinary course of business. Because the documents themselves were not documents under seal, it was reasonable for appellee to destroy them after the lapse of the normal three-year period of limitations. See D.C. Code Ann. Sec. 12-301(7).
 
 
 22
 We thus conclude that appellee has met its burden of demonstrating unreasonable delay and undue prejudice and hold that both count one and appellant's claim regarding transfers of interests to James Clark are thus barred by the equitable doctrine of laches.
 
 
 23
 B. Other Claims.
 
 
 24
 We agree with the district court that appellant's separate claims regarding sales of interests to employees and the amount paid per percentage point of interest in the partnership are meritless.
 
 
 25
 The partnership agreement excepted from the right of first refusal any transfers without consideration and any assignments to subsidiaries. The challenged transfers meet both criteria. The assignments to Carr employees were in recognition of past services, as indicated by the language in the assignment documents, "[I]n recognition of [the employee's] efforts, ability and diligence exhibited in the course of his employment, the Carr Company has assigned to him a portion of said participatory interest." As we have noted, "past consideration is no consideration." Murray v. Lichtman, 339 F.2d 749, 752 n. 5 (D.C. Cir. 1964). Thus, these assignments are excepted from the agreement as transfers without consideration. Additionally, because the transaction regarding each employee is, at least in form, a transfer to a subsidiary, the employee transfers are excepted. The district court thus correctly dismissed these claims.
 
 
 26
 Finally, the district court correctly noted that the documents submitted by both parties indicated that each partner cashing out of the partnership would receive $789,000 from the sale of each percentage point in the transaction. Appellant's claim here is utterly baseless and thus properly rejected.
 
 
 27
 C. Sanctions.
 
 
 28
 The record demonstrates that Lindsey Jeanblanc's destruction of documents was knowing and willful, unlike that of the appellee which was done in the normal course of business. In cases involving the "willful, systematic, and extensive destruction ... of documents," we have clearly stated that a district court may dismiss an entire case as a sanction. See Synanon Church v. United States, 820 F.2d 421, 427 (D.C. Cir. 1987). Dismissal is an option at the disposal of a district court in exercising its "inherent power ... to levy sanctions in response to abusive litigation practices." Roadway Express, Inc. v. Piper, 447 U.S. 752, 765 (1980). The sanction was particularly appropriate here, where the documents were destroyed willfully and the opponent is in no position to present evidence of their content. See Synanon Church, 820 F.2d at 428 ("The occurrence of a cover-up raises a presumption that disclosure of the materials would be damaging.").
 
 
 29
 Accordingly, the decision of the district court is affirmed.