**DANO RESOURCE RECOVERY, INC., Plaintiff,**

v.

**DISTRICT OF COLUMBIA, Defendant.**

**Civil Action No. 91–571 SSH.**

United States District Court, District of Columbia.

April 25, 1996.

---

Peter Paul Mitrano, Jr., Etna, NH, for Plaintiff.

O. Gregory Lewis, Assistant Corporation Counsel, DC, Washington, DC, for Defendant.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are defendant's motion to dismiss and plaintiff's opposition thereto. Upon consideration of the entire record, defendant's motion to dismiss is granted.

## BACKGROUND

Because the past history of this case dictates its outcome here, that history is reviewed in some detail. On March 3, 1982, plaintiff Dano Resource Recovery, Inc., ("Dano") entered into a contract with the District of Columbia to build and operate a sludge and solid waste composting plant at the District's Blue Plains waste treatment facility. A standard dispute clause in the contract provided that any dispute "arising under" the contract would be decided by the Contracting Officer of the District of Columbia, and that a contractor could appeal the decision of the Contracting Officer within 30 days to the Contract Appeals Board ("CAB").

Pl.'s Compl., Ex. 1, ps. 16–17. Under the terms of the contract, the decision of the CAB would be "final and conclusive ... subject to ... review as may be provided by law." *Id.*

On April 11, 1983, the District notified plaintiff of several concerns it had regarding plaintiff's failure to perform in accordance with certain contract specifications. On May 9, 1983, after plaintiff had failed to remedy most or all of its lapses, the District declared plaintiff to be in default and terminated the contract. Plaintiff appealed the District's decision to the Contracting Officer, and in September 1983, when its appeal to the Contracting Officer proved unsuccessful, plaintiff appealed the Contracting Officer's decision to the CAB.

### Relevant Procedural History

Between 1983, when plaintiff appealed to the CAB, and 1990, when the CAB issued a lengthy determination upholding the decision of the Contracting Officer, several pertinent developments occurred. First, in 1985, the District of Columbia City Council passed the District of Columbia Procurement Practices Act ("DCPPA"), D.C.Code Ann. § 1–1181.1 *et seq.* (1992 Repl. & 1995 Supp.). The DCPPA provides that "[a]ll claims by a contractor against the District government arising under or relating to" a contract shall be submitted to the Director of the Department of Administrative Services (hereinafter "Director") for an informal hearing and decision.[1] D.C.Code Ann. § 1–1188.5(a). The DCPPA further provides that the CAB is "the exclusive hearing tribunal for" any appeal by an aggrieved party from a final decision by the Director. D.C.Code Ann. § 1–1189.3 (1992 Repl.) In essence, the DCPPA

did away with previous distinctions between claims "arising under" a contract and claims "relating to" the contract. *See District of Columbia v. Savoy Constr. Co.*, 515 A.2d 698 (D.C.1986) (pre-DCPPA case, holding that provision of dispute clause for resolution of "any dispute arising under the contract" by the Contracting Officer, with right of appeal to the CAB, did not apply to claims for breach of contract).

On July 6, 1987, while plaintiff's appeal to the CAB was pending, plaintiff filed an action for breach of contract against the District in the Superior Court of the District of Columbia. The Superior Court judge dismissed plaintiff's action because plaintiff had failed to exhaust its available administrative remedies, and on November 15, 1989, the District of Columbia Court of Appeals affirmed the dismissal. *Dano Resource Recovery v. District of Columbia*, 566 A.2d 483, 487 n. 8 (D.C.1989) (*"Dano I"*).[2] In its opinion affirming the decision of the Superior Court, the Court of Appeals noted that the DCPPA applied to plaintiff's contract with the District, rejecting plaintiff's contention that the particular breach alleged did not fall within the purview of the DCPPA. *Id.* at 485 n. 6; *see also Lumbermens Mut. Casualty Co. v. District of Columbia*, 566 A.2d 480 (D.C. 1989) (holding that the DCPPA applied to contracts entered into prior to the date of enactment of the DCPPA).[3]

On December 7, 1990, after years of discovery and following an administrative hearing which consumed 84 days, the CAB issued a 73–page decision upholding the contract termination, sustaining the District's claim for certain costs of equipment removal and site clean-up, but awarding Dano approxi-

---

**1.** Pursuant to a Mayor's Order of March 2, 1984, the Director of Administrative Services is the central procurement official of the city. *See* D.C.Code Ann. §§ 1–1181.7(22), 1–1182.3.

**2.** Plaintiff also filed a third-party action against the District in 1984, in the federal district court for the Eastern District of Virginia, where plaintiff was a defendant in a suit brought by a subcontractor. The district court dismissed plaintiff's third-party claim against the District, finding that plaintiff had not exhausted its administrative remedies with respect to the District, and the United States Court of Appeals for

the Fourth Circuit affirmed the lower court's dismissal of plaintiff's third-party action. *See Dano I*, 566 A.2d at 487 n. 8.

**3.** After it filed its notice of appeal from the dismissal, but before the Court of Appeals had heard argument, plaintiff filed a petition for writ of mandamus in the Court of Appeals, requesting that the Court of Appeals order the CAB to set a date to hear plaintiff's case. *See Dano I*, 566 A.2d at 484 n. 4. "After the District filed a memorandum explaining the procedures that were being followed," the Court of Appeals denied plaintiff's petition. *Id.*

mately $152,000 improperly withheld by the District. On January 9, 1991, plaintiff appealed the decision of the CAB to the District of Columbia Court of Appeals, pursuant to the DCPPA. *See* D.C.Code Ann. § 1–1189.5(a).

In its notice of appeal from the CAB decision, and in its concurrently-filed "Petition for Review" of the CAB decision, plaintiff stated that it was filing an appeal "solely as a protective appeal," and that it "contend[ed] that the [DCPPA] is not applicable to this matter." Suppl.Mem. in Supp. of Def.'s [First] Mot. to Dismiss, Attachs. 1, 2. On July 19, 1991, the District of Columbia Court of Appeals issued an Order requiring the parties to brief the issue whether the DCPPA applied to plaintiff's appeal.

In response to that Order, on July 31, 1991, Dano filed a "motion to dismiss" its appeal. Plaintiff argued in its brief that the DCPPA conflicted with the District of Columbia Self–Government and Governmental Reorganization Act, D.C.Code Ann. §§ 1–201 to 1–299.7 (1992 Repl.) ("Self–Government Act"), because it allegedly altered the jurisdiction of the District of Columbia courts.[4] Therefore, plaintiff argued, the DCPPA was unconstitutional. *See* Def.'s [Second] Mot. To Dismiss, Ex. B, at 6–12. Dano also argued in its motion to dismiss its appeal that the CAB "was not the proper forum to hear Dano's breach of contract claims," *id.* at 14, and that it "was entitled to a trial *de novo*" on its breach of contract claims, *id.* at 18.

Defendant filed an opposition to Dano's motion to dismiss its appeal, responding to Dano's constitutional claims and its claims that the CAB lacked jurisdiction to hear its appeal from the adverse decision of the Contracting Officer. *See* Def.'s [Second] Mot. To Dismiss, Ex. C. On January 13, 1992, the Court of Appeals denied Dano's motion to dismiss its appeal. On February 23, 1993, the Court of Appeals issued an opinion affirming the decision of the CAB. *Dano Resource Recovery, Inc. v. District of Columbia*, 620 A.2d 1346 (D.C.), *cert. denied,* —

U.S. ——, 114 S.Ct. 343, 126 L.Ed.2d 308 (1993) (*"Dano II"*). Plaintiff petitioned the Supreme Court for a writ of certiorari to the Court of Appeals. Plaintiff's petition for writ of certiorari presented the following question:

> Whether the enactment by the District of Columbia City Council of the Procurement Practices Act of 1985, which purports to grant exclusive jurisdiction over disputes between contractors and the District of Columbia to the District of Columbia Contract Appeals Board, and which thereby deprives the District of Columbia trial courts of jurisdiction over breach of contract claims brought by contractors against the District, was beyond the authority delegated to the Council by the District of Columbia Home Rule Act.

Def.'s [Second] Mot. To Dismiss, at 4. The Supreme Court denied plaintiff's petition for a writ of certiorari on October 18, 1993. *See Dano Resource Recovery, Inc. v. District of Columbia*, —— U.S. ——, 114 S.Ct. 343, 126 L.Ed.2d 308 (1993).

### *The Current Action*

On March 18, 1991, after plaintiff had appealed the CAB decision to the District of Columbia Court of Appeals, but before the Court of Appeals had rendered its decision, plaintiff filed this action. This Court stayed the case pending resolution of plaintiff's appeal in the District of Columbia Court of Appeals. *Dano Resource Recovery, Inc. v. District of Columbia*, Civ. No. 91–571 SSH, 1992 WL 165977 (D.D.C. June 30, 1992). Although · plaintiff thereafter informed this Court of the decisions of the Court of Appeals and of the Supreme Court, neither party moved the Court to lift the stay it had imposed in 1992. The Court lifted the stay *sua sponte* on April 5, 1995. On June 12, 1995, defendant filed a motion to dismiss plaintiff's complaint; on June 26, 1995, plaintiff filed an opposition. Most of plaintiff's claims are barred by the doctrine of issue preclusion, and the rest of plaintiff's claims

---

4. The Self–Government Act provides that the Council of the District of Columbia has no authority to, *inter alia*, "[e]nact any act, resolution, or rule with respect to any provision of Title 11

(relating to organization and jurisdiction of District of Columbia courts)." D.C.Code Ann. § 1–233(a)(4) (1992 Repl.)

are devoid of merit. Accordingly, the Court grants defendant's motion to dismiss.

## DISCUSSION

Plaintiff's complaint contains seven counts. In Count I, plaintiff requests the Court to issue a declaratory judgment that the DCPPA conflicts with the Self–Government Act, because it allegedly alters the jurisdiction of the District of Columbia courts. In Count II, plaintiff claims that the District breached its contract with plaintiff and requests "a trial *de novo* for its breach of contract claims" and "at least" $70 million in damages. In Count III, plaintiff alleges that the findings of the CAB in its 73–page decision were "fraudulent, arbitrary, capricious, so grossly erroneous as to necessarily imply bad faith, or were not supported by substantial evidence," and plaintiff requests *de novo* review of the decision of the CAB.

Count IV consists of a request for monies allegedly owed plaintiff by the District. Count V alleges that the District violated plaintiff's due process rights, because the CAB did not set a hearing date on plaintiff's appeal "from at least the period of time between September 9, 1986 and early 1988," and because the CAB's decision did not issue until 1990. Count VI alleges that the District violated plaintiff's rights under the Fourteenth Amendment, and Count VII alleges that the DCPPA unconstitutionally impaired plaintiff's contract with the city. The Court will address each of these Counts in order.

### Count I: Plaintiff's Challenge to the Self–Government Act

█ Plaintiff's contention that the DCPPA violates the Self–Government Act is barred by the doctrine of issue preclusion, or collateral estoppel. "The doctrine of issue preclusion holds that once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive against a party to the prior proceed-

ing in a subsequent suit based on a different claim." *Synanon Church v. United States,* 820 F.2d 421 (D.C.Cir.1987) (citing, *inter alia, Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979)). Not only did the District of Columbia Court of Appeals in *Dano I* hold that the DCPPA applied to plaintiff's claims, but in *Dano II,* the parties fully briefed the same constitutional issue plaintiff persists in asserting here—namely, that the Self–Government Act renders the DCPPA unconstitutional. The Court of Appeals in *Dano II* rejected this contention and went on to affirm the decision of the CAB. In so doing, it rendered its .decision on plaintiff's constitutional arguments "necessary" to support the judgment in *Dano II. See Synanon Church,* 820 F.2d at 424. Plaintiff's petition for a writ of certiorari asserted the same constitutional question raised, briefed, and resolved in *Dano II,* and the Supreme Court denied plaintiff's petition. This Court will not revisit such well-trodden ground. *See Clark–Cowlitz Joint Operating Agency v. FERC,* 826 F.2d 1074, 1079 (D.C.Cir.1987) (noting that "one who has actually litigated an issue should not be allowed to relitigate it") (quoting Restatement (Second) of Judgments at 6 (1982)).

### Counts II, III, and IV: Plaintiff's "Appeal" from the CAB

█ Plaintiff attacks the decision of the CAB from two different angles in Counts II and III of its complaint. In Count II, plaintiff requests the Court to ignore the decision of the CAB (and apparently that of the Court of Appeals affirming the CAB) and hold a trial *de novo* on plaintiff's breach of contract claims.[5] In Count III, in contrast, plaintiff requests the Court to review the decision of the CAB (and apparently to ignore the decision of the Court of Appeals) and find the CAB decision, *inter alia,* "fraudulent" and unsupported by the facts.

---

5. The Court of Appeals had not issued its decision in *Dano II* when plaintiff filed its action in this Court. In plaintiff's opposition to defendant's second (1995) motion to dismiss, however, plaintiff argues that the decision of the Court of Appeals "may be void," because the Court of Appeals did not have "competent jurisdiction" to

hear the appeal. This argument is without merit. Because the DCPPA applies to plaintiff's contract claims, the Court of Appeals was the proper forum for plaintiff's appeal from the CAB and therefore was a court of "competent jurisdiction" for the purposes of its appeal.

The Court will neither conduct a *de novo* review of plaintiff's CAB appeal nor review it according to the standard employed by the District of Columbia Court of Appeals in plaintiff's first (and proper) appeal to that court. Both Counts II and III are precluded by the ruling in the Court of Appeals in *Dano II*. Plaintiff fully briefed both its contention that the CAB was not the proper forum for its appeal, and its contention that it was entitled to a trial *de novo* on its contract claim, in its motion to dismiss its appeal in *Dano II*. The Court of Appeals denied plaintiff's motion to dismiss its appeal and went on to issue an opinion upholding the decision of the CAB, implicitly rejecting both plaintiff's request for a trial *de novo* and its assertion that the CAB lacked jurisdiction to hear plaintiff's appeal in the first place.

The Court of Appeals has previously held that plaintiff's contract with the District is governed by the DCPPA. *See Dano I*, 566 A.2d at 485 n. 5; *see also Lumbermens Mutual*, 566 A.2d at 480. Because the contract is governed by the DCPPA, plaintiff must follow the avenues of redress prescribed in the DCPPA; that is, plaintiff must take an appeal from the Director (now the Contracting Officer) to the CAB, and subsequently to the District of Columbia Court of Appeals. D.C.Code Ann. §§ 1–1189.4–5(a). Plaintiff availed itself of this route. When plaintiff's appeals proved unsuccessful, plaintiff additionally sought a writ of certiorari from the Supreme Court of the United States, and the Supreme Court denied plaintiff's petition. In effect, plaintiff is now attempting to attack collaterally in this Court the series of well-reasoned decisions from the CAB and the District of Columbia Court of Appeals. Plaintiff's attempt to relitigate its case is not grounded in reason or law, and it therefore fails.

■ Count IV of plaintiff's complaint consists only of a request for money allegedly owed plaintiff by the District, though the information plaintiff presents on this claim is far from adequate. From what the Court can discern, after terminating its contract with plaintiff, the District withheld approximately $476,000 in funds due and owing Dano, to recoup the cost of removing Dano's equipment and of disposing of almost 40,000 tons of compost material. The CAB found that the District was entitled to receive $323,767.00, and that the District owed Dano $152,475, compounded at 4% interest from the date the claim was received by the District. *See* Suppl.Mem. in Supp. of Def.'s [First] Mot. To Dismiss, Attach. 3, at 72 (CAB decision). The Internal Revenue Service ("IRS") apparently asserted a tax lien against the joint venture of which Dano was a part. Because the Court herein disposes of any claims which could conceivably be termed "federal questions," and because Count IV presents (if anything) a question regarding enforcement of the CAB decision and the obligations of the District vis-a-vis Dano, Count IV presents no cognizable federal question. Nor will the Court assert supplemental jurisdiction over this issue, if a justiciable issue it is.

## Counts V, VI, and VII: Plaintiff's Constitutional Claims

■ Plaintiff's claims in Count V are barred by the doctrines of issue preclusion and claim preclusion. Plaintiff's first allegation—that the CAB violated its due process rights by taking seven years to issue a decision—was squarely determined in *Dano I*. 566 A.2d at 486–87 (holding that Dano had failed to show that the CAB appeal process was inadequate or that resort to the CAB was otherwise futile). Plaintiff's suggestion that the low interest rate awarded it by the CAB was a "taking of property" is precluded under the doctrine of claim preclusion. *See Clark–Cowlitz*, 826 F.2d at 1079 ("a party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not to have another chance to do so") (quoting Restatement (Second) of Judgments at 6 (1982)). Plaintiff had ample time and opportunity to contest this aspect of the CAB's decision before the Court of Appeals, and this Court will not entertain its untimely challenge.

■ Plaintiff's claim in Count VI is meritless, because the Fourteenth Amendment does not apply to the District of Columbia. *See Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Finally, plaintiff's

claim in Count VII that the DCPPA impaired its contractual obligations was argued (and implicitly rejected) in plaintiff's motion to dismiss its appeal in the D.C. Court of Appeals. *See* Def.'s Mot. To Dismiss, Attach. B, at 13–14. Accordingly, this claim, too, is barred.

## CONCLUSION

Had the Court an inkling in 1992, when it issued its Order staying this case, that plaintiff would persist in asserting claims clearly barred or of no merit following the resolution of its appeal to the District of Columbia Court of Appeals, the Court would have dismissed this action without prejudice. Now, after years of litigation, thousands of pages of transcripts and discovery, and nearly a hundred pages of analysis from the CAB and the Court of Appeals upholding the District's decision to terminate its ill-fated contract with plaintiff, plaintiff has the temerity to suggest not only that all of its prior claims are still justiciable by this Court, but that discovery should be conducted as well. Pl.'s Opp. to Def.'s [Second] Mot. To Dismiss, at 1. Plaintiff is in error. Defendant's motion to dismiss is granted. An appropriate Order accompanies this Opinion.

## ORDER

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that defendant's motion to dismiss is granted.

SO ORDERED.