Michele E. SHEPHERD and LaRue
Graves, Appellees,

v.

AMERICAN BROADCASTING
COMPANIES, INC.,
Appellant.

Nos. 94–7141, 94–7186.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 16, 1995.

Decided Aug. 25, 1995.

Rehearing and Suggestion for
Rehearing In Banc Denied
Oct. 6, 1995.*

* Randolph, Circuit Judge, did not participate in this matter.

William H. Jeffress, Jr., Washington, DC, argued the cause, for appellant. With him on the briefs, were Randall J. Turk, J. Bradley Bennett, James R. Heavner, Jr., John H. Pickering and Louis R. Cohen, Washington, DC. A. Douglas Melamed, Washington, DC, entered an appearance.

Mark Lane, New York City, argued the cause, for appellees. With him on the brief was Nkechi Taifa, Washington, DC.

Before: HENDERSON, ROGERS and TATEL, Circuit Judges.

TATEL, Circuit Judge:

█ We review a district court's use of its inherent power to punish litigation misconduct with the ultimate sanction of default. As old as the judiciary itself, the inherent power enables courts to protect their institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary, including even dismissals and default judgments. In order to promote the disposition of cases on their merits, to protect parties and attorneys from the possible misuse of the inherent power, and to preserve its effectiveness, we hold that a district court may use its inherent power to enter a default judgment only if it finds, first, by clear and convincing evidence—a preponderance is not sufficient—that the abusive behavior occurred; and second, that a lesser sanction would not sufficiently punish and deter the abusive conduct while allowing a full and fair trial on the merits. Because the

district court made neither of these findings, we vacate the default judgment and remand for proceedings consistent with this opinion.

## I.

In January 1986, plaintiffs Michele Shepherd and LaRue Graves, two graphic artists in ABC's Washington News Bureau, filed an employment discrimination complaint in the Superior Court of the District of Columbia against ABC, its parent, Capital Cities/ABC, Inc., and two ABC officials. The complaint contained multiple counts of race and gender discrimination based on Mr. Graves' termination from ABC and Ms. Shepherd's allegedly undesirable work assignments. It included retaliation claims stemming from Ms. Shepherd's and Mr. Graves' participation in certain minority employee activities at ABC. ABC removed the case to the United States District Court for the District of Columbia, eventually moving for summary judgment.

In July 1989, on the day set aside for the summary judgment hearing, Ms. Shepherd and Mr. Graves filed an emergency motion for sanctions against ABC, alleging that ABC and its attorneys had engaged in litigation misconduct both by altering a document produced in discovery and by harassing two potential witnesses. The district court postponed the summary judgment hearing, instead hearing testimony for several days regarding the alleged misconduct. Ms. Shepherd's and Mr. Graves' central claim was that ABC had altered a two-page confidential memorandum describing an October 1985 meeting of ABC minority employees that Ms. Shepherd and Mr. Graves had attended. ABC's Washington Bureau personnel manager, Carol Ornes, had prepared the memorandum for ABC officials in New York. She based the memorandum on a report from Robert Sam, another attendee. Ms. Shepherd and Mr. Graves claimed that the original Ornes memorandum had identified them as participants in the meeting, but that in an effort to deceive them and the court, ABC deleted their names from the version produced in discovery in early 1986. To support their charge, Ms. Shepherd and Mr. Graves called Ms. Ornes' former secretary, Marilyn Powell, who testified that she recalled typing Ms. Shepherd's name somewhere in a draft of the memorandum almost four years earlier. She did not recall typing Mr. Graves' name. Ms. Powell was one of the two witnesses Ms. Shepherd and Mr. Graves alleged ABC's attorneys harassed.

ABC categorically denied altering the memorandum, introducing evidence suggesting that Ms. Powell instead could have remembered seeing Ms. Shepherd's name on other documents, such as an agenda prepared for the meeting. Ms. Ornes, several of the memorandum's recipients, and the attorneys who assisted in the document production all testified that the memorandum ABC produced in discovery was the authentic memorandum. In addition, from the files of ABC's Vice President for Human Resources, John Frisoli, ABC produced a second copy of the memorandum in which neither Ms. Shepherd's nor Mr. Graves' name appeared. The Frisoli copy was identical to the copy ABC had already produced except that its first page contained three hand-written notes Mr. Frisoli added in October 1985.

Crediting plaintiffs' witnesses and unpersuaded by ABC's explanations, the district court found that ABC or its attorneys had fraudulently altered the Ornes memorandum by deleting references to Ms. Shepherd and Mr. Graves and that its attorneys had harassed the two witnesses. *Shepherd v. ABC,* 151 F.R.D. 179, 182, 187–89 (D.D.C.1992). Relying on both its inherent power and Federal Rule of Civil Procedure 37(b), the district court entered a default judgment against all defendants. *Id.* at 191–93. In further support of the default judgment, the district court found several additional acts of misconduct, including that ABC submitted false or improperly verified answers to interrogatories; that ABC attempted to deceive the plaintiffs and the court by denying that it had deliberately sent Mr. Sam to the October 8 meeting as a spy; that ABC's attorneys drafted "an artful and deceptive declaration" for Sam to sign; and that the attorneys attempted to suppress relevant evidence through an improper assertion of work-product privilege. *Id.* at 181–89. On the basis of these findings, the court also concluded that Ms. Shepherd and Mr. Graves had proven

their retaliation claims on the merits. *Id.* at 193.

ABC moved for reconsideration. It challenged each finding of misconduct and argued that the district court should have insisted on clear and convincing evidence. In response, the district court adhered to the preponderance standard, but modified a number of its findings. *Shepherd v. ABC,* 151 F.R.D. 194 (D.D.C.1993). Most significantly, it vacated its finding that ABC had removed Mr. Graves' name from the Ornes memorandum, it vacated its harassment finding regarding witness Marilyn Powell, and it withdrew its findings that ABC's counsel had knowingly submitted a deceptive declaration from Robert Sam and had attempted to suppress evidence. It also vacated its ruling that Ms. Shepherd and Mr. Graves had proven their retaliation claims on the merits. The district court reaffirmed its conclusions that ABC removed Ms. Shepherd's name from the Ornes memorandum, harassed a second witness, deceived the court regarding Mr. Sam's role as informant, and improperly verified interrogatory answers. The court also found that ABC failed to satisfy its obligation to preserve all copies of the Ornes memorandum. Although the court vacated the default judgment against the two individual defendants, it reaffirmed its default judgment against ABC and Capital Cities in favor of both Ms. Shepherd and Mr. Graves. *Id.* at 196–211.

After additional discovery and briefing, the district court awarded Ms. Shepherd compensatory and punitive damages of $125,000 and Mr. Graves compensatory and punitive damages and back pay of over $184,000. *Shepherd v. ABC,* 862 F.Supp. 486, 503 (D.D.C.1994). It vacated the default judgment against Capital Cities and dismissed it from the case. *Id.* at 491, 504. The district court also awarded Ms. Shepherd and Mr. Graves attorneys' fees of over $518,000. *Shepherd v. ABC,* 862 F.Supp. 505, 513 (D.D.C.1994).

ABC appeals the default judgment, arguing among other things that Rule 37(b) does not apply to this case, that inherent power sanctions require clear and convincing evidence of the predicate misconduct, and that even using a preponderance standard the evidence does not support any of the district court's misconduct findings. ABC also argues that the district court should have held further hearings to resolve disputed issues regarding the calculation of damages and attorneys' fees.

## II.

 We begin with Rule 37(b)(2), one of the two sources of authority on which the district court rested its default judgment. This rule permits the court to use such orders "as are just" to sanction a party that "fails to obey an order to provide or permit discovery." Fed.R.Civ.P. 37(b)(2). As we have stated, "[a] production order is generally needed to trigger Rule 37(b)." *Attorney General v. The Irish People, Inc.,* 684 F.2d 928, 951 n. 129 (D.C.Cir.1982), *cert. denied,* 459 U.S. 1172, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983); *see also* Jamie S. Gorelick, Stephen Marzen & Lawrence Solum, DESTRUCTION OF EVIDENCE § 3.4, at 74 & n. 23 (1989 & Supp. 1995) ("[f]ederal court decisions ... unanimously agree that sanctions pursuant to Rule 37 may not be awarded absent violation of a court order"). The district court, however, did not identify a discovery order that ABC violated. Ms. Shepherd and Mr. Graves argue that other courts have approved Rule 37(b) sanctions for violations of oral or even "constructive" orders, but they have furnished us with no basis for finding that either existed here. Rule 37(b) therefore cannot support the sanctions before us today.

 We turn then to the inherent power. When rules alone do not provide courts with sufficient authority to protect their integrity and prevent abuses of the judicial process, the inherent power fills the gap. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 46, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991). As early as 1812, the Supreme Court stated that "[c]ertain implied powers must necessarily result to our courts of justice, from the nature of their institution," explaining that such powers "cannot be dispensed with in a court, because they are necessary to the exercise of all others." *United States v. Hudson,* 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259 (1812); *see Chambers,* 501 U.S. at 43, 111 S.Ct. at

2132. The inherent power encompasses the power to sanction attorney or party misconduct, and includes the power to enter a default judgment. *See Chambers,* 501 U.S. at 43–45, 111 S.Ct. at 2132–33; *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 765–66, 100 S.Ct. 2455, 2463–64, 65 L.Ed.2d 488 (1980); *Aoude v. Mobil Oil Corp.,* 892 F.2d 1115, 1118–19 (1st Cir.1989); *Phoceene Sous–Marine, S.A. v. U.S. Phosmarine, Inc.,* 682 F.2d 802, 806 (9th Cir.1982). Other inherent power sanctions available to courts include fines, awards of attorneys' fees and expenses, contempt citations, disqualifications or suspensions of counsel, and drawing adverse evidentiary inferences or precluding the admission of evidence. *See* Gregory P. Joseph, SANCTIONS: THE FEDERAL LAW OF LITIGATION ABUSE § 28(A) (2d ed. 1994).

■ Although we review a district court's use of its inherent power only for abuse of discretion, *see Chambers,* 501 U.S. at 55, 111 S.Ct. at 2138, our review is not perfunctory. As the Supreme Court has explained, "[b]ecause inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." *Roadway Express,* 447 U.S. at 764, 100 S.Ct. at 2463. The Court has also cautioned restraint in the use of inherent powers "[b]ecause of their very potency." *Chambers,* 501 U.S. at 44, 111 S.Ct. at 2132.

■ This case presents several issues regarding the nature of the district court's discretion to use its inherent power and of the restraints upon it. We first consider the burden of proof the district court must employ in determining whether predicate acts of fraudulent or bad-faith misconduct actually occurred. We then consider the extent to which the district court must explain why the specific sanction it selects is an appropriate response to the particular misconduct. Resolution of these issues requires us to balance the judicial system's need for an effective tool to discourage and punish misconduct with its need for appropriate restraint in imposing inherent power sanctions. Moreover, because the overriding purpose of the inherent power is "to achieve the orderly and expeditious disposition of cases," *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630–31, 82 S.Ct.

1386, 1389, 8 L.Ed.2d 734 (1962), the use of this power should reflect our judicial system's strong presumption in favor of adjudications on the merits, *see, e.g., Foman v. Davis,* 371 U.S. 178, 181–82, 83 S.Ct. 227, 229–30, 9 L.Ed.2d 222 (1962); *Shea v. Donohoe Constr. Co.,* 795 F.2d 1071, 1075 (D.C.Cir.1986); *Aoude,* 892 F.2d at 1118; *Kauffman v. Moss,* 420 F.2d 1270, 1276 (3d Cir.), *cert. denied,* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); 5 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE: CIVIL § 1357, at 599 & n. 67 (1969).

Before addressing these inherent power issues, however, we must deal with two arguments that, if sound, would make it unnecessary for us to consider one or even both of these issues. The first argument comes from plaintiffs, who claim that the district court did in fact find clear and convincing evidence that the charged acts of misconduct occurred. They point to the district court's repeated use of terms such as "convincing clarity," "inescapable conclusion," "convinced," "clearly demonstrate," and "compels the conclusion." 151 F.R.D. at 184, 188–90, 200, 211. As we read the record, however, these phrases largely reflect the district court's almost verbatim adoption of the plaintiffs' proposed findings of fact. *See, e.g.,* Joint Appendix (J.A.) at 975, 987, 993. Of greater significance, one of the district court's very few adjustments to the plaintiffs' proposed findings was to twice add the phrase "by a preponderance of the evidence" to its findings that litigation misconduct had occurred. *See* 151 F.R.D. at 180, 190. On rehearing, the district court not only stated that in its first decision it had "reached its findings by applying the preponderance of the evidence standard," but also expressly rejected ABC's claim that it should have used the clear and convincing evidence standard. *Id.* at 198. We are left with no doubt that the district court in fact used the preponderance standard in both of its decisions.

ABC claims that even using a preponderance standard, the evidence is insufficient to sustain any of the findings of litigation misconduct. While we agree with ABC with respect to most of the district court's findings (*see* part V below), given the highly

deferential "clearly erroneous" standard by which we review these findings, *see American Hosp. Ass'n v. Sullivan,* 938 F.2d 216, 221–22 (D.C.Cir.1991), we cannot agree that the district court could never properly find on this record that a preponderance of the evidence establishes that ABC altered the Ornes memorandum in contemplation of this litigation.

We thus turn to the first of the two fundamental questions in this case, namely, whether the inherent power sanction of default is proper for fraudulent or bad-faith litigation misconduct proven only by a preponderance of the evidence, or instead whether such misconduct must be proven by clear and convincing evidence. In this circuit, this is an issue of first impression.

### III.

■ Because "[t]here is always in litigation a margin of error," *Speiser v. Randall,* 357 U.S. 513, 525, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958), the selection of a standard of proof is a choice about where to place the risk of that error. As Justice Harlan once observed, in an ordinary civil suit a preponderance standard "seems peculiarly appropriate" because "we view it as no more serious in general for there to be an erroneous verdict in the defendant's favor than for there to be an erroneous verdict in the plaintiff's favor," while in the criminal context requiring proof beyond a reasonable doubt is proper because the "social disutility" of convicting an innocent person is greater than that of acquitting a guilty person. *In re Winship,* 397 U.S. 358, 371–72, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368 (1970) (concurring). We think the same analysis calls for a heightened standard of proof here. Because of the fundamental importance of trying cases on their merits, and, as we discuss below, because other sanctions can both deter and correct litigation misconduct when proven by only a preponderance of evidence, the "social disutility" of granting a trial on the merits to a party guilty of litigation misconduct is less than the social disutility of denying a trial to a party innocent of such misconduct. Put another way, it is better to risk permitting a "guilty" ABC to defend this case than to risk denying an "innocent" ABC its day in court.

Our sister circuits that have considered this and analogous questions have thus adopted a standard of proof higher than a preponderance of evidence. In a case addressing almost the precise issue we face here, the First Circuit concluded that for a district court to use its inherent power to dismiss a case based on a fraud on the court, the fraud must be proven "clearly and convincingly." *Aoude,* 892 F.2d at 1118. The Eighth Circuit reached a similar result. Reversing a district court's grant of summary judgment as a sanction for withholding a document in discovery, it held that fraud upon the court "must be supported by clear, unequivocal and convincing evidence." *Pfizer, Inc. v. International Rectifier Corp.,* 538 F.2d 180, 195 (8th Cir.1976), *cert. denied,* 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977). Several circuits have held that a district court may not dismiss an action as a sanction for counsel's dilatory conduct or a party's failure to appear absent a "clear record of delay or contumacious conduct by the plaintiff." *E.g., Ford v. Fogarty Van Lines, Inc.,* 780 F.2d 1582, 1583 (11th Cir.1986); *Pardee v. Stock,* 712 F.2d 1290, 1292 (8th Cir.1983); *Titus v. Mercedes Benz,* 695 F.2d 746, 749 (3d Cir.1982); *Graves v. Kaiser Aluminum & Chem. Co.,* 528 F.2d 1360, 1361 (5th Cir.1976); *cf. Synanon Church v. United States,* 820 F.2d 421, 423 (D.C.Cir.1987) (affirming judgment relying collaterally on D.C. Superior Court finding of fraud on the court by clear and convincing evidence).

A heightened standard of proof is particularly appropriate because most inherent power sanctions, including default judgments, are fundamentally punitive. Our judicial system has a cherished tradition of using a heightened standard of proof to guard against the erroneous imposition of criminal punishments and analogous deprivations of liberty, property, or reputation. *See, e.g., In re Winship,* 397 U.S. at 361–64, 90 S.Ct. at 1071; *Santosky v. Kramer,* 455 U.S. 745, 756, 102 S.Ct. 1388, 1396, 71 L.Ed.2d 599 (1982). Even in the case of punitive damages, which a mere preponderance of the evidence can sustain, *see Pacific Mut. Life Ins. Co. v. Haslip,* 499

U.S. 1, 23 n. 11, 111 S.Ct. 1032, 1046 n. 11, 113 L.Ed.2d 1 (1991), the Supreme Court recently observed that "[t]here is much to be said in favor of a State's requiring, as many do, ... a standard of 'clear and convincing evidence' or, even, 'beyond a reasonable doubt' " to sustain a punitive damage award, *id.* (citations omitted); *see, e.g., Nakajima v. General Motors Corp.,* 857 F.Supp. 100, 103 & n. 8 (D.D.C.1994) (noting earlier district court decision applying clear and convincing standard to punitive damage issue in products liability case). We ourselves have held that even civil contempt—a punishment that is part of a court's inherent power, *see Chambers,* 501 U.S. at 44, 111 S.Ct. at 2132, and that is, if anything, more remedial than punitive—requires the petitioner to bear "a heavy burden of proof, often described as proof by 'clear and convincing evidence,' that the respondent violated the court's prior order." *Washington–Baltimore Newspaper Guild, Local 35 v. The Washington Post Co.,* 626 F.2d 1029, 1031 (D.C.Cir.1980) (citation omitted); *see Armstrong v. Executive Office of the President,* 1 F.3d 1274, 1289 (D.C.Cir. 1993). The Supreme Court has recognized that awards of attorneys' fees for bad faith conduct serve the same punitive and compensatory purposes as fines imposed for civil contempt. *See Chambers,* 501 U.S. at 53–54, 111 S.Ct. at 2137. As a result, courts require clear and convincing evidence of misconduct before imposing attorneys' fees under their inherent power. *See, e.g., Autorama Corp. v. Stewart,* 802 F.2d 1284, 1287–88 (10th Cir. 1986); *Weinberger v. Kendrick,* 698 F.2d 61, 80 (2d Cir.1982), *cert. denied,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983). Because the inherent power sanctions of dismissal and default serve the same purposes as contempt, "vindicat[ing] the District Court's authority over a recalcitrant litigant," *Chambers,* 501 U.S. at 53, 111 S.Ct. at 2137 (internal quotation and citation omitted), these sanctions should demand the same standard of proof: clear and convincing evidence.

Finally, a heightened standard of proof is appropriate because the predicate misconduct at issue "involv[es] allegations of fraud or some other quasi-criminal wrongdoing by the defendant," *Addington v. Texas,* 441 U.S. 418, 424, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979). As the Supreme Court has explained, "[t]he interests at stake in those cases are deemed to be more substantial than mere loss of money and some jurisdictions accordingly reduce the risk to the defendant of having his reputation tarnished erroneously by increasing the plaintiff's burden of proof." *Id.* Proof of civil fraud ·in general therefore requires clear and convincing evidence. *See, e.g., Barr Rubber Prods. Co. v. Sun Rubber Co.,* 425 F.2d 1114, 1120–21 (2d Cir.), *cert. denied,* 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970); *Ago v. Begg, Inc.,* 705 F.Supp. 613, 616–17 (D.D.C. 1988), *aff'd mem.* 911 F.2d 819 (D.C.Cir. 1990). Similarly, we have previously explained that a finding of bad faith requires heightened certainty. *American Hosp.,* 938 F.2d at 220–21. It is also well-settled that a litigant seeking relief from a judgment under Federal Rule of Civil Procedure 60(b)(3) based on allegations of fraud upon the court must prove the fraud by clear and convincing evidence. *See, e.g., Ervin v. Wilkinson,* 701 F.2d 59, 61 (7th Cir.1983); 11 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE: CIVIL § 2860 at 189 (1973 & Supp.1994–95); *cf. Richardson v. National R.R. Passenger Corp.,* 49 F.3d 760, 763 (D.C.Cir.1995) (quoting district court conclusion that Rule 60(b)(3) movant had failed to prove fraud by clear and convincing evidence).

Seeking to distinguish Rule 60(b)(3) from this case, the district court reasoned that while requiring clear and convincing evidence was logical when a litigant attempts to avoid a final judgment, this requirement does not extend to the imposition of a default judgment for fraud during the course of a proceeding. In the latter context, the court concluded: "As with any issue tried in a civil case, the court need only make its findings based on the preponderance of the evidence." 151 F.R.D. at 198. Yet when a default judgment turns on whether the court finds that a fraud has in fact occurred, at stake is not just "any issue tried in a civil case," but rather an issue of an entirely different character, serving as it does both to punish misconduct and to defeat a party's very ability to try its case on the merits. While important differences

may well exist between imposing a default judgment and granting relief from a final judgment, we simply are not satisfied that these differences justify limiting the use of the clear and convincing standard to post-judgment determinations.

■ Requiring clear and convincing evidence of litigation misconduct as a condition for a default judgment will not leave district courts powerless to correct and deter misconduct. Instead of granting a default judgment, for example, the district court could have found, on the basis of its conclusion that ABC altered the Ornes memorandum, that ABC in fact knew Ms. Shepherd had attended the October 1985 minority employee meeting. This type of adverse evidentiary determination, along with the related sanction of precluding the admission of evidence, is often termed an "issue-related" sanction. *See, e.g., Marrocco v. General Motors Corp.*, 966 F.2d 220, 225 (7th Cir.1992); Gorelick, DESTRUCTION OF EVIDENCE § 3.16, at 118. Because issue-related sanctions are fundamentally remedial rather than punitive and do not preclude a trial on the merits, we conclude that they do not require a heightened standard of proof. Rather, a district court may impose issue-related sanctions whenever a preponderance of the evidence establishes that a party's misconduct has tainted the evidentiary resolution of the issue.

■ The availability of issue-related sanctions sufficiently preserves a court's power to guard against abuses of the judicial process in those instances where the abuse is not proven clearly and convincingly. However, for those inherent power sanctions that are fundamentally penal—dismissals and default judgments, as well as contempt orders, awards of attorneys' fees, and the imposition of fines—the district court must find clear and convincing evidence of the predicate misconduct. Because the district court did not apply this standard, and because we cannot determine from the record whether the district court's preponderance finding of document alteration was influenced by its other findings of misconduct (which we reverse), we remand for reconsideration.

## IV.

This brings us to the second major issue in this case, namely, whether, on remand, a finding of misconduct on the basis of clear and convincing evidence will by itself permit the district court to enter a default judgment. We hold that it will not.

As the Supreme Court stated in connection with one of its declarations that courts must use their inherent power with restraint and discretion, "[a] primary aspect of that discretion is the ability to fashion an *appropriate* sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44–45, 111 S.Ct. at 2132–33 (emphasis added). We ourselves have made clear that "dismissal is a 'drastic step, normally to be taken only after unfruitful resort to lesser sanctions.'" *Ripalda v. American Operations Corp.*, 977 F.2d 1464, 1466 (D.C.Cir.1992) (quoting *Jackson v. Washington Monthly Co.*, 569 F.2d 119, 123 (D.C.Cir.1977)). To us, this means that on remand, in order to justify a default judgment—a sanction that is analogous to dismissal and in some respects more severe—the district court not only must find clear and convincing evidence of misconduct but also must provide a specific, reasoned explanation for rejecting lesser sanctions, such as fines, attorneys' fees, or adverse evidentiary rulings.

In similar situations our sister circuits have imposed similar requirements. The First Circuit, for example, reviewed a district court's dismissal of a case under its inherent power, writing:

> [D]istrict courts must reserve such strong medicine for instances where the defaulting party's misconduct is correspondingly egregious. In calibrating the scales, the judge should carefully balance the policy favoring adjudication on the merits with competing policies such as the need to maintain institutional integrity and the desirability of deterring future misconduct.

*Aoude*, 892 F.2d at 1118 (citations omitted). Holding that "[t]he district court must, before dismissing an action under its inherent powers, consider less drastic sanctions," the Ninth Circuit directed the district court to provide "a reasonable explanation of possible

and meaningful alternatives." *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 381 (9th Cir. 1988). Several circuits have likewise concluded, in reviewing sanctions imposed under Rule 37(b), Rule 11, or other rules or statutory provisions, that a district court abuses its discretion when it fails to provide a satisfactory basis for rejecting less drastic remedies. *See, e.g., Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40–41 (4th Cir.1995); *Zambrano v. City of Tustin*, 885 F.2d 1473, 1480 (9th Cir.1989); *Aztec Steel Co. v. Florida Steel Corp.*, 691 F.2d 480, 481–82 (11th Cir.1982), *cert. denied*, 460 U.S. 1040, 103 S.Ct. 1433, 75 L.Ed.2d 792 (1983); *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 503–05 (4th Cir.1977), *cert. denied*, 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1978); *Industrial Bldg. Materials, Inc. v. Interchemical Corp.*, 437 F.2d 1336, 1338–39 (9th Cir.1970).

 We agree with the First Circuit that the district court must properly "calibrate the scales" to ensure that the gravity of an inherent power sanction corresponds to the misconduct. The graver the sanction under consideration, the more precision this calibration requires. We also agree with our sister circuits that for purposes of appellate review this calibration must be apparent in the record. *See, e.g., Wilson*, 561 F.2d at 505. This does not mean that courts must first *impose* a lesser sanction, for we have suggested, and other courts have expressly held, that a district court need not exhaust other options before dismissing a suit or imposing a default judgment. *Automated Datatron, Inc. v. Woodcock*, 659 F.2d 1168, 1169–70 (D.C.Cir.1981); *see, e.g., Beil v. Lakewood Eng'g & Mfg. Co.*, 15 F.3d 546, 552 (6th Cir.1994); *Aoude*, 892 F.2d at 1118. But a district court may not rely on its inherent power to impose a sanction of either default or dismissal without explaining why lesser sanctions were likely to be ineffective. Requiring the district court to establish on the record why lesser sanctions will not adequately deter and punish the misconduct protects against misuse of the inherent power and facilitates adjudications on the merits, while preserving the court's ability to deter and punish abuses of the judicial process.

 Applying these principles, courts generally respond to document destruction or alteration with the ultimate sanction of dismissal or default in two types of cases: where the destroyed document is dispositive of the case, so that an issue-related sanction effectively disposes of the merits anyway, *see, e.g., Synanon Church*, 820 F.2d at 427–28; *State Farm Fire & Casualty Co. v. Frigidaire*, 146 F.R.D. 160, 163 (N.D.Ill.1992); and where the guilty party has engaged in such wholesale destruction of primary evidence regarding a number of issues that the district court cannot fashion an effective issue-related sanction, *see, e.g., Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 135 (S.D.Fla.1987); *Wm. T. Thompson Co. v. General Nutrition Corp.*, 593 F.Supp. 1443, 1456 (C.D.Cal.1984). *See generally* Gorelick, DESTRUCTION OF EVIDENCE § 3.16, at 122–26 (collecting cases). Nothing in the record of this case demonstrates either circumstance. The alleged document alteration—in our view the most serious act of alleged misconduct—concerned a single memorandum. And even if the memorandum had been altered, the original would not have provided direct evidence of any of Ms. Shepherd's or Mr. Graves' claims of discrimination. It would only have precluded ABC from arguing, as a partial defense to the retaliation claims, that it was unaware Ms. Shepherd and Mr. Graves were at the minority employee meeting.

Moreover, nothing in the district court's opinions or the record has yet persuaded us that alternative sanctions, such as issue-related sanctions or fines, would have been ineffective. Stating in its first decision that "the flagrant misconduct of the defendants and their counsel mandates imposition of the most severe sanctions for abuse of the judicial process," 151 F.R.D. at 190, the district court made the following conclusion of law:

> Imposition of severe sanctions is required in this case by the severity of the abuses that took place. The record before this Court demonstrates that the defendants impeded and obstructed the litigation process by [their] destruction and alteration of a crucial document and through the harassment of witnesses and filing false

and misleading affidavits. Therefore, the sanction of striking the defendants' answers and entering default judgment for plaintiffs in their claims against the defendants is entirely appropriate in this action. Imposition of a lesser sanction would only reward the defendants for their misconduct in this litigation.

*Id.* at 191–92. Even assuming that all the alleged misconduct occurred—an assumption we cannot sustain, as we indicate in part V— this passage tells us only that the district court thought the misconduct was serious and imposing a default judgment was appropriate. It does not explain why a lesser sanction would "only reward the defendants" and fail to provide meaningful deterrence and punishment for the misconduct.

The district court's only explanation for rejecting lesser sanctions was its reliance on our affirmance of the dismissal of an entire case in *Weisberg v. Webster,* 749 F.2d 864 (D.C.Cir.1984). With all due respect, we think *Weisberg* is distinguishable from this case. At issue in *Weisberg* was a plaintiff's willful and repeated refusal to comply with an order requiring him to respond to the defendant's discovery requests concerning information that went directly to the merits of the case. *Id.* at 866–69. Here, in contrast, the alleged alteration did not go to the heart of plaintiffs' case, and although the district court found repeated acts of misconduct, we reverse most of these findings. Moreover, the plaintiff's recalcitrance in *Weisberg* had entirely halted the discovery process and frustrated the defendant's ability to litigate its case. Although the alleged alteration of the memorandum in this case did cause a major disruption and waste of judicial resources, it need not have unduly delayed the case.

*Weisberg* is also distinguishable because it involved a sanction imposed under Federal Rule of Civil Procedure 37, which expressly authorizes dismissal or default for noncompliance with a discovery order. Here, in contrast, the court imposed a default judgment under its inherent power, which is not grounded in rule or statute and must be exercised with particular restraint.

Furthermore, the district court's reliance on *Weisberg* fails to explain why any sanction less than default would not effectively punish and deter the underlying misconduct while at the same time allowing the trial of the merits to proceed. We do not understand, for instance, why the district court could not have accomplished these objectives by finding that the original Ornes memorandum had contained Ms. Shepherd's name and that ABC had known she attended the minority employee meeting, perhaps combined with an award of attorneys' fees and a fine if the document alteration were proven by clear and convincing evidence. Nor did the district court provide the necessary explanation in its opinion on rehearing, when it merely reiterated its conclusion that ABC's conduct was "so egregious that a default is the only sufficient sanction." 151 F.R.D. at 211.

For all of these reasons, before we can sustain a default judgment in Ms. Shepherd's favor, the district court not only must find the misconduct by clear and convincing evidence, but also must articulate a reasoned rejection of lesser sanctions. Mr. Graves' case presents a different situation. On rehearing, the district court acknowledged that the record failed to establish that the Ornes memorandum had ever referred to him. Whatever tangential connection the alleged document alteration may have continued to have to Mr. Graves' claims for relief, such fraudulent misconduct is therefore simply too remote to justify a default judgment in his favor. *Cf. Synanon Church,* 820 F.2d at 427–28 (justifying sanction of dismissal by emphasizing value of destroyed evidence to merits of case). And because, as we next discuss, none of the other findings of misconduct will sustain so extreme a remedy, we reverse the Graves default judgment.

## V.

We turn finally to the district court's findings that ABC failed to preserve all copies of the Ornes memorandum, that it deceived the court about Mr. Sam's attendance as a spy at the employees' meeting, that it improperly verified its interrogatory responses, and that its attorneys harassed a potential witness. Although we leave it to the district court to

reconsider whether the evidence establishes by a preponderance of the evidence or by clear and convincing evidence, if at all, that ABC deleted Ms. Shepherd's name from the Ornes memorandum in contemplation of this litigation, we conclude that these other findings of misconduct either are not supported by the record even on the preponderance standard necessary for an issue-related sanction, or that they do not provide a basis for sanctioning ABC.

### DOCUMENT PRESERVATION

 A sanction for failure to preserve evidence is appropriate only when a party has consciously disregarded its obligation to do so. *See Akiona v. United States,* 938 F.2d 158, 161 (9th Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1567, 118 L.Ed.2d 212 (1992). We thus agree with the district court that "ABC had an obligation to preserve and also to not alter documents it knew or reasonably should have known were relevant to the *Shepherd* litigation if it knew the destruction or alteration of those documents would prejudice the plaintiffs." 151 F.R.D. at 198. In concluding that ABC breached this obligation, the district court found that ABC failed to preserve all copies of the Ornes memorandum after it became aware "during the earliest stages of this litigation that the Ornes memorandum was relevant if not significant." *Id.* at 199.

The record, however, does not establish that additional copies of the memorandum existed when ABC became aware of their relevance to this litigation in early 1986, but only that they existed in October 1985, the month in which the minority employee meeting occurred. According to the district court, "[t]he events which ABC blames for its inability to find the missing copies all occurred after [this suit was filed in early 1986]." *Id.* But some of the events that ABC blamed for its inability to locate all copies of the Ornes memorandum in July 1989 could well have occurred before this suit commenced. This includes the possible failure of certain intended recipients ever to receive the memorandum, their failure to retain and file it, and a series of staff changes in ABC's Personnel Department be-

ginning in mid–1985. *See* Memorandum in Support of Motion of ABC for Reconsideration (May 27, 1992), at 17–18. The record establishes that Ms. Ornes herself destroyed at least her computer copy of the memorandum within days of its preparation. *See* J.A. at 578–81.

 Even if the copies had existed when this suit began, ABC's inability to produce them during the sanctions hearing does not establish that ABC breached any obligation. Provided ABC conducted a diligent search for the memorandum in response to the interrogatories and produced the best evidence it found, we are unaware of any authority for the proposition that ABC had a duty to keep searching for additional copies or the original. *Cf.* Fed.R.Evid. 1004 (copies are admissible evidence if original not lost or destroyed in bad faith); *Bituminous Casualty Corp. v. Vacuum Tanks, Inc.,* 975 F.2d 1130, 1132 (5th Cir.1992) (same). Obviously, if ABC discovered additional nonidentical copies, it was obligated to supplement its responses, *see* Fed.R.Civ.P. 26(e), as it did once it discovered the Frisoli copy. And of course, if ABC did alter the memorandum, then its failure to preserve copies of the original memorandum would be sanctionable, but only as part of a scheme to cover up the alteration of the document. In the absence of a proper finding that ABC altered the memorandum, however, the fact that ABC could not find identical copies after early 1986 is not independently sanctionable.

### SPYING

 The district court also based its default sanction on its finding that ABC attempted to deceive the plaintiffs and the court by denying that it surreptitiously sent Robert Sam to spy on the minority employee meeting. Although ABC denied that it sent Mr. Sam to spy, it did not deny that Ms. Ornes knew Mr. Sam planned to attend, or that Ms. Ornes had told Mr. Sam that she would be interested in a report of the meeting. The record does not indicate that ABC misrepresented these conceded facts. Instead, ABC vigorously sought to distinguish these facts from plaintiffs' claim that it had directed Mr. Sam to attend as its spy. Ms.

Shepherd and Mr. Graves disagreed, claiming that ABC did send Mr. Sam to the meeting, or at least that under the circumstances Mr. Sam would have felt compelled to attend on ABC's behalf.

Whether ABC directed Mr. Sam to attend the meeting thus presented the district court with an ordinary factual dispute resolvable through the usual adversary presentation of conflicting evidence. If the district court did not believe Ms. Ornes and Mr. Sam, it could have concluded that Ms. Ornes had directed Mr. Sam to attend. Such a finding, however, *would not support sanctioning* ABC, because the record contains no evidence that ABC argued the contrary position in bad faith. In the absence of evidence that ABC had suborned perjured testimony or otherwise intentionally extracted testimonial misrepresentations from Ms. Ornes or Mr. Sam, the only appropriate finding of misconduct regarding Mr. Sam's attendance would be that Ms. Ornes or Mr. Sam had not testified truthfully. We express no opinion about whether the record could have supported even this finding.

### INTERROGATORY VERIFICATION

To support its finding that ABC improperly verified its responses to the plaintiffs' interrogatories, the district court relied on the fact that Ms. Ornes, who had verified the answers, was, at the sanctions hearing three years later, unable to confirm the accuracy of any of the responses and in fact claimed that one of the responses was inaccurate. We find in the record no evidence of any ABC misconduct, either in the process by which it provided its interrogatory responses or in the content of those responses.

■■■■■ Federal Rule of Civil Procedure 33 expressly permits a representative of a corporate party to verify the corporation's answers without personal knowledge of every response by "furnish[ing] such information as is available *to the party.*" Fed.R.Civ.P. 33(a) (emphasis added); *see, e.g., General Dynamics Corp. v. Selb Mfg. Co.,* 481 F.2d 1204, 1210 (8th Cir.1973), *cert. denied,* 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974); *United States v. 42 Jars,* 264 F.2d 666, 670 (3d Cir.1959); *Chapman & Cole v. Itel Con-*

*tainer Int'l B.V.,* 116 F.R.D. 550, 558 (S.D.Tex.1987), *aff'd,* 865 F.2d 676 (5th Cir.), *cert. denied,* 493 U.S. 872, 110 S.Ct. 201, 107 L.Ed.2d 155 (1989); *In re Folding Carton Antitrust Litigation,* 76 F.R.D. 417, 419 (N.D.Ill.1977). Of course, the representative must have a basis for signing the responses and for thereby stating on behalf of the corporation that the responses are accurate. *See Folding Carton,* 76 F.R.D. at 419. The representative may accomplish this through whatever internal process the corporation has chosen, including discussions with counsel. *Cf. Wilson,* 561 F.2d at 508 (corporate attorneys authorized to sign corporation's interrogatory responses). The fact that years later the representative may not recall the process she used to ascertain the truthfulness of the corporation's responses, as apparently happened here, does not necessarily undermine the veracity of the original interrogatory answers.

■■■■ If the party propounding the interrogatories wants to know the names of the individuals with personal knowledge of each response, it can always ask for them as part of the interrogatories. Ms. Shepherd and Mr. Graves did just that in their initial interrogatory instructions. Although ABC objected on multiple grounds, it said that it had based its answers "on information obtained from those officials most likely to have relevant information," including the two individual defendants in this action and officials in several specified departments. J.A. 62–63, 79. ABC volunteered to identify the specific source of a particular answer "[i]f and when plaintiffs are able to demonstrate a reasonable need." J.A. 63, 79. Apparently satisfied with this response, Ms. Shepherd and Mr. Graves pressed no further.

With respect to the content of the interrogatory answers—which if anything was more favorable to Ms. Shepherd and Mr. Graves than was Ms. Ornes' inconsistent testimony during the sanctions hearing—the only answer that Ms. Ornes claimed was inaccurate was a statement that identified her as one of three people who knew that Mr. Sam planned to attend the employee meeting. She testified instead that she had

not known that Mr. Sam would attend. The district court did not believe her. It concluded that Ms. Ornes in fact had directed Mr. Sam to attend as ABC's spy, thus confirming the accuracy of the only interrogatory answer Ms. Ornes disputed. Furthermore, ABC stands by its original interrogatory responses, notwithstanding Ms. Ornes' inability personally to confirm each answer. Under all of these circumstances, we do not agree with the district court that ABC had an obligation to correct its interrogatory answers after the sanctions hearing.

In short, nothing about Ms. Ornes' testimony provided a basis for sanctioning ABC for its interrogatory responses. Unless Ms. Ornes' inconsistent statements justified sanctioning her for misconduct at the hearing, the only appropriate use of her inconsistent testimony was as record evidence from which the court could make credibility determinations and adverse inferences.

### WITNESS HARASSMENT

The district court found that an outside attorney for ABC, Steven Hut, harassed Kristina Celich, a potential witness employed in the ABC graphics department with Ms. Shepherd and Mr. Graves. Some fifteen months after Ms. Celich repeatedly informed one of ABC's other attorneys that she did not want to talk about the case, Mr. Hut approached her at her workplace during lunch and asked to speak with her. The court credited Ms. Celich's testimony that she "felt uncomfortable and cornered" in front of her coworkers, and that she agreed to meet with Mr. Hut in private after lunch "just to get rid of him." 151 F.R.D. at 205. The district court also credited Mr. Hut's testimony that it was his "style" to try to talk with witnesses face-to-face, and so during a visit to ABC's offices to speak with other witnesses, he decided to ask Ms. Celich if she would be willing to talk, although he knew that she had previously told other ABC attorneys that she did not want to get involved. When Ms. Celich again made clear to Mr. Hut that she did not want to talk, he pursued her no further. The only factual dispute in their accounts was whether, as Ms. Celich testified, Mr. Hut threatened her by saying that her testimony "would not be able to stand up in court," or, as Mr. Hut testified, he said that all ABC yet knew of the plaintiffs' case was "hearsay statement after hearsay statement," so they were "trying to determine whether there was admissible evidence to be found." *Id.* The district court did not resolve this conflict, concluding only that Mr. Hut had made some statement that "disturbed and frightened" Ms. Celich. *Id.*

■■■ In sanctioning ABC for Mr. Hut's conduct, the district court relied on Model Rule of Professional Conduct 4.4, which provides that "a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person." The court acknowledged that its finding that Mr. Hut had violated this rule rested on Ms. Celich's perceptions of and reactions to Mr. Hut's effort to speak with her. 151 F.R.D. at 205–06. As we read Rule 4.4, however, whether attorney behavior is unprofessional depends instead on the attorney's perspective, that is, on whether in contacting the witness the attorney has "no substantial purpose other than to embarrass, delay, or burden a third person." While it is not the district court's role to enforce the rules of professional conduct, *see, e.g., W.T. Grant Co. v. Haines,* 531 F.2d 671, 677 (2d Cir.1976), we think Rule 4.4 provides a sound standard to guide a district court's use of its inherent power to sanction an attorney for harassment, *cf. Harlan v. Lewis,* 982 F.2d 1255, 1259–61 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 94, 126 L.Ed.2d 61 (1993) (affirming district court's use of Model Rule 3.4(f) as basis for inherent power sanction).

■■■ We have no reason to doubt that Ms. Celich was upset by Mr. Hut's conduct. Nor have we any reason to question the district court's statement that Mr. Hut "should have been more sensitive." But the district court did find that Mr. Hut had a substantial purpose when he approached Ms. Celich. In the court's own words, ABC "needed information and … wanted that information from Ms. Celich." 151 F.R.D. at 206. Although we can imagine a case in which an attorney's behavior is so harassing that it merits sanctioning, notwithstanding

the existence of a substantial purpose, this is not such a case. The record shows only that over a year after Ms. Celich told one ABC attorney that she would not cooperate, Mr. Hut asked her again, and that when Ms. Celich again refused, he pursued the matter no further. Even if we could sustain a finding that Mr. Hut had harassed Ms. Celich, this would only support sanctioning him, not his client. Like other courts, we disfavor sanctioning a party for counsel's misconduct unless the party itself is somehow implicated. *See Shea*, 795 F.2d at 1077–78; *see, e.g., In re Ruben*, 825 F.2d 977, 986 (6th Cir.1987), *cert. denied*, 485 U.S. 934, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988); *see also* Joseph, SANCTIONS § 27(A), at 436 ("a party cannot be taxed with the misconduct of his or her counsel absent evidence reflecting that the party participated in the misconduct").

## VI.

To sum up, we reverse the district court's findings that ABC wrongfully failed to preserve all copies of the Ornes memorandum, that it deceived the court about its role in Mr. Sam's attendance at the employee meeting, that it improperly verified interrogatory responses, and that its counsel harassed a witness. We also reverse the default judgment in favor of Mr. Graves, remanding his claims for disposition on the merits. We vacate the default judgment in favor of Ms. Shepherd and remand her claims for further proceedings consistent with this opinion. We accordingly also vacate the awards of damages and attorneys' fees.

On remand, the district court may impose an issue-related inherent power sanction, such as finding that ABC knew Ms. Shepherd attended the minority employee meeting, provided that it again finds by a preponderance of the evidence, without relying on the findings we have vacated in part V, that ABC altered the Ornes memorandum in contemplation of this litigation. The district court may impose other inherent power sanctions, such as attorneys' fees or fines, if it finds by clear and convincing evidence that the memorandum was so altered. A default judgment remains an option, but only if the district court calibrates such a severe sanc-

tion by explaining on the record the basis for its conclusion that lesser sanctions will not adequately deter and punish the misconduct.

This result accomplishes the objectives we set for ourselves at the outset. It leaves in the hands of the district court the tools needed to protect the integrity of the judicial process. At the same time, it protects against the misuse of the inherent power and promotes the trial of cases on their merits.

*So Ordered.*